S08G0722. GEORGIA DEPARTMENT OF PUBLIC SAFETY
v. DAVIS et al.
(676 SE2d 1)

CARLEY, Justice.
State Trooper David Phillips was traveling behind a pickup truck driven by Pamela Davis, who is a rural mail carrier, when he

began running radar on vehicles that were approaching him in the other lane. Phillips was using Ms. Davis' truck as a cover in a technique known as blocking. Ms. Davis stopped her truck, which had a flashing strobe light on top, signaled a left turn, and waited for traffic to clear. Once Phillips realized that Ms. Davis had stopped, he braked as hard as possible, but was unable to avoid a collision with her truck.

Ms. Davis and her husband Scott Davis (Appellees) brought suit against the Department of Public Safety. The Department moved for summary judgment based on the exception in OCGA § 50-21-24 (6) to the waiver of sovereign immunity in the Georgia Tort Claims Act. The trial court denied the motion, and the Court of Appeals affirmed on interlocutory appeal. *Department of Public Safety v. Davis*, 289 Ga. App. 21 (656 SE2d 178) (2007). We granted certiorari to consider whether the Court of Appeals correctly analyzed OCGA § 50-21-24 (6) in light of *Georgia Forestry Comm. v. Canady*, 280 Ga. 825 (632 SE2d 105) (2006).

In *Canady*, we recognized that our construction of OCGA § 50-21-24 (6) should accomplish a "balance between the inherently unfair and inequitable results from the strict application of sovereign immunity and the need to limit the State's exposure to tort liability that the General Assembly expressed as its goal in OCGA § 50-21-21." *Georgia Forestry Comm. v. Canady*, supra at 830. Including all of the relevant language, OCGA § 50-21-24 (6) reads as follows: "The state shall have no liability for losses resulting from . . . the failure to provide, or the method of providing, law enforcement, police, or fire protection . . . ." *Canady* interpreted the phrase "method of providing" police or fire protection as covering the acts or omissions of state employees in both making and implementing policy, thereby achieving "complete protection of the policy-making decisions of the executive branch[ ] of government from judicial review." *Georgia Forestry Comm. v. Canady*, supra. Trooper Phillips may have been implementing policy when he caused the collision in question. However, a separate issue must be addressed in this case. Appellees assert that the evidence shows that their alleged losses did not result from an implementation of policy. This issue can only be resolved by construing and applying the portion of OCGA § 50-21-24 (6) which mandates that, in order for the state to be immune from liability, the alleged losses must "result[ ] from" the method of providing police or fire protection.

Our opinion in *Canady* carefully reviewed precedent from four other states having exceptions to the waiver of sovereign immunity which are identical or nearly identical to OCGA § 50-21-24 (6), and we selected the approach of Texas and West Virginia. *Georgia Forestry Comm. v. Canady*, supra at 827-830. Both decisions relied

upon in *Canady*, *State of Texas v. Terrell*, 588 SW2d 784, 788 (Tex. 1979) and *Beckley v. Crabtree*, 428 SE2d 317, 320-321 (W. Va. 1993), fully support the proper construction of OCGA § 50-21-24 (6). The balanced approach of *Terrell* and *Beckley* includes a test for determining whether the alleged losses result from the making or implementation of a policy decision:

> Resolution of the issue of whether a loss or claim occurs as a result of the method of providing law enforcement protection requires determining whether the allegedly negligent act resulted from the manner in which a formulated policy regarding such protection was implemented.

*Beckley v. Crabtree*, supra at 321. Under this test, if the allegedly negligent act resulted from the manner in which a policy regarding police protection was implemented, the alleged losses are not a result of that implementation and, therefore, the state is not immune from liability.

It was not our purpose in *Canady*, nor was it necessary, to address the question, answered in *Terrell* and *Beckley*, of when the alleged losses "result from" the method of providing police or fire protection. We touched on this question only in dicta in *Georgia Forestry Comm. v. Canady*, supra at 829-830, fn. 2. In that footnote, we noted that *Smith v. Burdette*, 566 SE2d 614, 618 (W. Va. 2002) "appears to be more limiting of the coverage of the exception." *Georgia Forestry Comm. v. Canady*, supra at 829, fn. 2. Indeed, the language of *Burdette* seems, contrary to *Canady*, to exclude the implementation of policy from those acts or omissions which constitute a method of providing police or fire protection. However, we then attempted briefly to clarify our understanding of *Beckley* as holding that "negligent acts of employees acting pursuant to policy would be subject to the application of sovereign immunity while negligent acts of employees not acting pursuant to policy would not." *Georgia Forestry Comm. v. Canady*, supra at 830, fn. 2. By construing *Beckley* as subjecting only negligent acts of employees "acting pursuant to policy" to the application of sovereign immunity, we were making the same critical distinction made in both *Terrell* and *Beckley* between two forms of negligence. Although the dissent dismisses that distinction as appearing only in *Burdette* and as a "sleight of hand," it is clearly set forth in the following language of *Terrell* and *Beckley* which is completely ignored in the dissenting opinion:

> "[I]f the negligence causing an injury lies in the formulating of policy — i.e., the determining of the method of police

> protection to provide — the government remains immune from liability. If, however, an officer or employee acts negligently in carrying out that policy, government liability may exist under the [Tort Claims] Act." [Cit.] (Emphasis omitted.)

*Beckley v. Crabtree*, supra (citing *State of Texas v. Terrell*, supra). Only in the former situation is there a danger of circumventing OCGA § 50-21-24 (6) by "an indirect attack [on policymaking] via a lawsuit brought against a state governmental entity based on the alleged negligence of a state employee providing police, law enforcement, or fire protection pursuant to policy." *Georgia Forestry Comm. v. Canady*, supra at 830. There is no such danger here if Ms. Davis' "injury did not result from the implementation of a formulated policy." *Beckley v. Crabtree*, supra.

The fact that the injury occurred during implementation of policy does not control the determination of whether that injury "result[ed] from" the making or implementation of policy. The state is immune from liability if the alleged negligence causing an injury, which injury occurs during implementation of policy, lies in some defect in the policy itself. The state is not immune from liability where its employee is implementing a non-defective policy, but does so in a negligent manner. Although the state may be immune from liability for negligence in creating a certain policy which causes injury during its implementation, such immunity is unavailable for an employee's allegedly negligent act or omission which is not authorized by any policy.

It is undisputed that the Department of Public Safety

> has a policy of detecting and apprehending individuals who exceed the speed limit by use of radar and motor vehicles. Such a policy decision is not subject to an attack of negligence under [the Tort Claims] Act. This policy, however, obviously does not include directing the officer to strike any vehicle in his path in apprehending a speeder.

*State of Texas v. Terrell*, supra (quoted in *Beckley v. Crabtree*, supra). As the Court of Appeals recognized, "the record . . . contains evidence that the State Patrol Crash Review Board found that the accident was preventable and that Trooper Phillips did not operate his car 'in a manner consistent with policy and training.' " *Department of Public Safety v. Davis*, supra at 23. Under this evidence, therefore, he clearly was not "acting pursuant to policy." *Georgia Forestry Comm. v. Canady*, supra at 830, fn. 2. "Basically, he followed too closely and did not pay attention. This is not a policy decision, but

rather simple, preventable negligence." *Department of Public Safety v. Davis*, supra. Any such negligence "was not a part of the formulated policy. Therefore, the State is subject to liability for injuries resulting from the negligence, if any, of the highway patrolman in colliding with [Ms. Davis'] vehicle." *State of Texas v. Terrell*, supra (quoted in *Beckley v. Crabtree*, supra).

A contrary holding would render meaningless the statutory language that the state is not liable for losses "resulting from" a policy decision with respect to the provision of law enforcement, police, or fire protection. Under the Department's construction of OCGA § 50-21-24 (6), the state is not liable for the negligence of a state employee who is at the time implementing a method of providing police or fire protection, regardless of how unrelated that negligence may be to any policy decision. Such a construction would effectively eliminate the balanced approach of *Canady*, in disregard of the very precedent most heavily relied on in that case, by converting an exclusion of policy decisions into "a general exclusion for any act or omission that occurs while an officer is providing police or fire protection to the public. . . . [T]he Legislature did not intend to create such a broad exclusion." *State of Texas v. Terrell*, supra at 787. See also *Beckley v. Crabtree*, supra at 320.

Accordingly, the Court of Appeals correctly affirmed the trial court's denial of the motion for summary judgment filed by the Department.

*Judgment affirmed. All the Justices concur, except Benham, J., who concurs in the judgment only and Sears, C. J., and Melton, J., who dissent.*

SEARS, Chief Justice, dissenting.

Because the majority significantly weakens the holding of *Georgia Forestry Commission v. Canady*[1] that the State is entitled to sovereign immunity for the negligent acts of its employees when implementing or executing law enforcement policy, I respectfully dissent.

Although the General Assembly has generally waived the State's sovereign immunity for "the torts of state officers and employees while acting within the scope of their official duties or employment,"[2] it also expressly exempted from that waiver any liability for "losses resulting from . . . the failure to provide, or the method of providing, law enforcement, police, or fire protection."[3] In analyzing

---

[1] 280 Ga. 825 (632 SE2d 105) (2006).
[2] OCGA § 50-21-23 (a).
[3] OCGA § 50-21-24 (6).

this exception to the waiver of sovereign immunity in *Canady*, we construed OCGA § 50-21-24 (6) to mean that sovereign immunity applied not only "to the making of policy decisions by state employees and officers including those relating to the amount, disbursement, and use of equipment and personnel to provide law enforcement, police or fire protection services," but also "to the acts and omissions of state employees and officers executing and implementing those policies."[4] The majority eviscerates the latter aspect of *Canady* by holding that the State is not immune from liability because Trooper Phillips performed negligently in running radar under the facts of this case and thus could not have been acting pursuant to policy.[5] A fair reading of *Canady* and the record do not support the majority's conclusion.

The majority omits any discussion of applicable policies, and there are several that directed Trooper Phillips's actions. First, OCGA § 35-2-32 (b) specifically provides that it is a primary duty of state patrol officers such as Trooper Phillips to "patrol the public roads and highways of this state" and to engage in "traffic enforcement." Second, Policy No. 17.14.4 of the Policy Manual of the Department of Public Safety directs state troopers to engage in activities such as that specified in OCGA § 35-2-32. Third, Policy No. 6.08.02 provides that the State Patrol places radar devices in its patrol cars to enforce speed limits and "save lives by reducing crashes." The State Patrol also has a policy of permitting troopers to use only the types of radar devices specifically approved by it. It is undisputed that the radar devices the State Patrol places in its vehicles permit a trooper to track the speed of multiple vehicles while the trooper's car is moving and that the trooper must then monitor his radar display on the dashboard to track the cars and determine which of the cars is speeding. Fourth, Policy No. 11.01.2 notes that "traffic law enforcement is a primary responsibility" of the Department and grants troopers "latitude in determining types of enforcement action to be taken . . . to ensure the safety of the motoring public [and] reduce the number and severity of traffic crashes."

Based on the foregoing, the record shows that Phillips was acting pursuant to specific policies directing him to enforce traffic laws, was using a device put in place by a State Patrol policy, and was exercising the discretion granted to him by policy to determine the appropriate type of enforcement action to take. The record thus shows that Phillips's actions were closely related to implementing policy when he negligently caused the accident in question. In the

---

[4] *Canady*, 280 Ga. at 830.

[5] Majority opinion, p. 207.

language of the majority opinion, Ms. Davis's injuries "resulted from" the execution of a specific set of policies. To hold that the exception of OCGA § 50-21-24 (6) does not apply in this case would permit "an indirect attack [on policy] via a lawsuit brought against a state governmental entity based on the alleged negligence of a state employee providing police, law enforcement, or fire protection pursuant to policy."[6] Contrary to the majority's assertion, there is nothing in this language from *Canady* that limits immunity to defects in the policy itself.[7]

Although the majority states that Phillips "may have been implementing policy when he caused the collision,"[8] the majority concludes that the accident did not "result from" the implementation of policy because Phillips was negligent in failing to maintain a proper lookout while he was driving. According to the majority, Phillips was simply negligent and thus "clearly was not 'acting pursuant to policy.' "[9] For this reason, the majority concludes the State is not entitled to immunity. Acting negligently and pursuant to policy, however, are not mutually exclusive concepts. As we stated in *Canady*, "negligent acts of employees acting pursuant to policy would be subject to the application of sovereign immunity."[10]

Moreover, contrary to the majority's assertion, *Beckley v. Crabtree*,[11] on which this Court relied in *Canady*, does not support the majority's holding. In fact, its reasoning supports a holding of immunity for Phillips's conduct. In *Beckley*, after a sheriff had completed an arrest and was putting his shotgun in the trunk of his car, the shotgun accidentally discharged, injuring another person. The West Virginia Supreme Court held that the phrase

"the method of providing police, law enforcement or fire protection" contained in W.Va. Code § 29-12A-5 (a) (5) refers to the formulation and implementation of policy related to how police, law enforcement or fire protection should be provided. Resolution of the issue of whether a loss or claim occurs as a result of the method of providing law enforcement protection requires determining whether the allegedly negligent act resulted from the manner in which a

---

[6] *Canady*, 280 Ga. at 830.
[7] Majority opinion at 206.
[8] Majority opinion at 204.
[9] Majority opinion at 206.
[10] *Canady*, 280 Ga. at 830, n. 2.
[11] 428 SE2d 317 (W. Va. 1993).

formulated policy regarding such protection was implemented.[12]

The majority interprets the last sentence of this quotation as follows: "Under this test, if the allegedly negligent act resulted from the manner in which a policy regarding police protection was implemented, the alleged losses are not the result of that implementation and therefore, the state is not immune from liability."[13] As I will demonstrate, the majority completely misreads *Beckley*.

In *Beckley*, the court held that the accidental discharge of the shotgun did not occur during the implementation of a policy and could not be considered a method of providing law enforcement.[14] The court's reasoning, omitted from discussion by the majority, is as follows:

> The methods employed by the law enforcement officers who detained and arrested the suspect were complete before the gun discharged. Sheriff Crabtree was simply returning a shotgun to the trunk of the car when the accident occurred. Although this incidental action occurred within the scope of employment, it was not so closely related or necessary to effectuating the arrest as to be considered a component of "the method of providing law enforcement protection."[15]

Thus, the *Beckley* court would have concluded that the State was entitled to immunity if the shotgun's discharge had occurred during the arrest. In the language of the court, the discharge would have been "closely related" and "necessary to effectuating the arrest," and the employee's "negligent act" would have *"resulted from* the manner in which a formulated policy regarding such protection was implemented."[16] As this discussion demonstrates, contrary to the majority's statement of the *Beckley* test, the test actually provides immunity if the alleged negligent act "results from" the manner is which a policy regarding police protection is implemented.

The foregoing analysis of *Beckley*, on which we heavily relied in *Canady*, supports a finding of immunity in this case, as Trooper Phillips's conduct was closely related to the implementation of policy. In addition, because *Beckley* did not provide immunity, it demonstrates the fallacy of the majority's assertion that, if its position does

---

[12] Id. at 321.

[13] Majority opinion at 205.

[14] *Beckley*, 428 SE2d at 321.

[15] Id.

[16] Id.

not prevail, the result would be absolute immunity for any act of an employee providing law enforcement protection.[17]

The West Virginia test that the majority attributes to *Beckley* actually arose in the subsequent case of *Smith v. Burdette*.[18] The *Smith* court construed West Virginia's law enforcement exception not to apply to negligent acts of employees in executing policy and limited it to the decision-making and planning process in developing policy. The court disapproved *Beckley* in the process.[19] In adopting its rule, *Smith* relied on Kansas's narrow construction of its exception.[20] Under the *Smith* test, if an alleged negligent act results from the manner in which an employee implements a policy regarding police protection, the State is not entitled to immunity. The problem for the majority is that this was not the test in *Beckley*, and in *Canady*, we specifically disapproved of *Smith* and Kansas's narrow construction of its exception.[21] In *Canady*, we noted that Kansas limited its exception to " 'basic [policy] matters [such] as the type and number of fire trucks and police cars considered necessary for the operation of the respective departments.' "[22] We declined to follow Kansas's narrow exception[23] and were careful to adopt a rule that employees' negligent acts in executing policy fall within the scope of our exception.[24] Moreover, in footnote two of *Canady*, we specifically declined to follow *Smith* and held that "[u]nder our construction of West Virginia's earlier position, negligent acts of employees acting pursuant to policy would be subject to the application of sovereign immunity while negligent acts of employees not acting pursuant to policy would not."[25] The majority attempts to sidestep the explicit language that the negligent acts of an employee in implementing policy are absolutely entitled to immunity by stating that the negligence to which we were referring was not really the negligence of the employee but the negligence in formulating policy.[26] This sleight of hand is at odds with the plain language we used in *Canady*.

The majority also improperly relies on the Texas Supreme Court's decision in *Texas v. Terrell*[27] and our discussion of it in *Canady*. In *Canady*, to support our holding that the exception to the

---

[17] Majority opinion at 207.
[18] 566 SE2d 614 (W. Va. 2002).
[19] Id. at 618.
[20] Id. at 617-618.
[21] See *Canady*, 280 Ga. at 827-830 and 830, n. 2.
[22] Id. at 827 (quoting *Jackson v. City of Kansas City*, 680 P2d 877, 890 (1984)).
[23] Id. at 827-829.
[24] Id. at 829-830.
[25] Id. at 830.
[26] Majority opinion at 205.
[27] 588 SW2d 784 (Tex. 1979).

waiver of sovereign immunity set forth in OCGA § 50-21-24 (6) was applicable to acts of state employees "executing and implementing" policies, we quoted a sentence from Terrell that provided the Texas exception covered " 'those acts . . . which constitute the execution of or the actual making of those policy decisions.' "[28] This is the only time the word "execution" or any of its variations or synonyms (such as implementation) appears in the *Terrell* opinion, and the Texas court did not explain the meaning of the word. Later Texas cases have clarified that the exception applies only to the formulation of policy and not its implementation by state employees.[29] Thus, *Terrell*, as it has been construed, is at odds with the clear rule we adopted in *Canady* for applying our exception to the negligent acts of employees in executing and implementing policy.

Although I share the majority's concern for striking the proper balance between protecting the State treasury and the inherently unfair results that can occur in the strict application of sovereign immunity,[30] the majority's position strikes the balance too far to the side of harming the State treasury. As stated in OCGA § 50-21-21 (a), State government does not have flexibility in exerting control over its exposure to liability. Instead, it "must provide a broad range of services and perform a broad range of functions throughout the entire state, regardless of how much exposure to liability may be involved." Under the majority's position, the State treasury will be exposed to tremendous liability if, during for the hundreds or thousands of times per day that State troopers act pursuant to policies regarding the use of their equipment and the execution of their duties, one or more of the troopers acts negligently. Under the dissent's position, the State treasury will be protected when State troopers' actions are closely related or necessary to the execution of policy, but will not be protected for the inevitable negligence that will arise when their actions are not closely related to executing policy.[31]

For the foregoing reasons, I dissent to the majority opinion.

BENHAM, Justice, concurring in judgment only.

Because I agree with the majority that the trooper is not entitled to sovereign immunity under OCGA § 50-21-24 (6) but I cannot

---

[28] *Canady*, 280 Ga. at 829 (quoting *Terrell*, 588 SW2d at 788).

[29] *Waco v. Hester*, 805 SW2d 807, 812 (Tex. App. Waco 1990); *Dallas v. Cox*, 793 SW2d 701, 728 (Tex. App. Dallas 1990); Michael Shaunessy, *Sovereign Immunity and the Extent of the Waiver of Immunity Created by the Texas Tort Claims Act*, 53 Baylor L. Rev. 87, 185 (2001).

[30] See *Canady*, 280 Ga. at 826; OCGA § 50-21-21 (a).

[31] See *Beckley*, 428 SE2d at 321 (accidental discharge of gun after effectuating arrest not a "method of providing law enforcement").

agree with the entire rationale employed by the majority to reach that conclusion, I concur in judgment only.

DECIDED MARCH 27, 2009.

*Thurbert E. Baker, Attorney General, Kathleen M. Pacious, Deputy Attorney General, Loretta L. Pinkston, Senior Assistant Attorney General, Robert L. Bunner, Assistant Attorney General*, for appellant.

*Zipperer, Lorberbaum & Beauvais, Ralph R. Lorberbaum, Eric R. Gotwalt, Paul H. Felser*, for appellees.