**WHOLE COURT**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**November 20, 2015**

# In the Court of Appeals of Georgia

A15A0991. LOEHLE et al. v. GEORGIA DEPARTMENT OF
    PUBLIC SAFETY et al.

MILLER, Judge.

In this case arising from a police chase around the Georgia Capitol, Allan Loehle and Nicole Livieratos, individually and as the personal representative of Zach Loehle, a minor (collectively, "Loehle"), sought interlocutory review of the trial court's orders granting the Georgia Department of Public Safety's ("DPS") motion to dismiss on sovereign immunity grounds and denying Loehle's spoliation motion against the City of Atlanta ("City"). Because we find that DPS did not waive its immunity, we affirm the grant of DPS's motion to dismiss. We vacate the denial of Loehle's spoliation motion and remand this case for the trial court to reconsider the issue in light of the correct legal standard.

"We review de novo a trial court's denial of a motion to dismiss based on sovereign immunity grounds, which is a matter of law. However, factual findings by the trial court in support of its legal decision are sustained if there is evidence authorizing them, and the burden of proof is on the party seeking the waiver of immunity." (Citations omitted.) *Ga. Dept. of Human Resources v. Johnson*, 264 Ga. App. 730, 731 (592 SE2d 124) (2003). See also *Bonner v. Peterson*, 301 Ga. App. 443 (687 SE2d 676) (2009) ("the trial court's pre-trial ruling on factual issues necessary to decide the OCGA § 9-11-12 (b) (1) motion is reviewed on appeal under the any evidence rule").

The evidence, which is largely undisputed, shows that on January 6, 2009 at approximately 3:00 p.m., after receiving a request by Atlanta Police Department officers for assistance with a vehicle reported stolen during a carjacking the previous day, two Georgia State Patrol troopers located the vehicle proceeding southbound on Interstate 75/85 near the exit for Martin Luther King, Jr. Drive ("MLK"). The first trooper pulled in directly behind the vehicle, and the vehicle signaled a right turn and entered the exit lane for MLK. The trooper followed and activated his blue lights to initiate a traffic stop. The vehicle increased its speed up the exit ramp, and the trooper

2

activated his siren.[1] The vehicle bypassed several stopped vehicles headed westbound on MLK at its intersection with Jesse Hill, Jr. Drive, driving through a red light. The vehicle then signaled a left turn onto Capitol Avenue; for one block, Capitol Avenue is a one-way street, and the vehicle proceeded southbound - the wrong way - down Capitol Avenue. The vehicle then entered the intersection of Capitol Avenue and Memorial Drive, striking Livieratos' vehicle and injuring Loehle, Livieratos, and their son Zach.

1. Loehle contends that the trial court erroneously granted DPS's motion to dismiss for lack of subject matter jurisdiction based on a flawed application of OCGA § 50-21-24 (6). We discern no error.

OCGA § 50-21-24 (6) provides that "[t]he state shall have no liability for losses resulting from . . . the failure to provide, or the *method* of providing, law enforcement, police, or fire protection." (Emphasis supplied). Although "method" was initially interpreted broadly, our Supreme Court has

> construe[d] the exception to the waiver of sovereign immunity found in OCGA § 50-21-24 (6) as authorizing the application of sovereign immunity to the making of policy decisions by state employees and officers including those relating to the amount, disbursement, and use

---

[1] The troopers' dashboard cameras also recorded the pursuit.

of equipment and personnel to provide law enforcement, police or fire protection services, and to the acts and omissions of state employees and officers executing and implementing those policies.

*Ga. Forestry Comm. v. Canady*, 280 Ga. 825, 830 (632 SE2d 105) (2006). Our Supreme Court highlighted the distinction between the formulation of a policy and an officer's adherence to the policy by noting that

> if the negligence causing an injury lies in the formulating of policy – i.e., the determining of the method of police protection to provide – the government remains immune from liability. If, however, an officer or employee acts negligently in carrying out that policy, government liability may exist under the Tort Claims Act.

(Punctuation omitted.) *Ga. Dept. of Public Safety v. Davis*, 285 Ga. 203, 205-206 (676 SE2d 1) (2009). Here, Loehle does not challenge DPS's policies concerning pursuits. Rather, Loehle contends that troopers failed to properly follow those policies. See Id. at 206 ("Although the state may be immune from liability for negligence in creating a certain policy which causes injury during its implementation, such immunity is unavailable for an employee's allegedly negligent act or omission which is not authorized by any policy."). See also OCGA § 40-6-6 (d) (2).[2]

---

[2] "When a law enforcement officer in a law enforcement vehicle is pursuing a fleeing suspect in another vehicle and the fleeing suspect damages any property or

Accordingly, the sole issue is whether the troopers were negligent in carrying out certain DPS policies. We conclude that they were not.

In his brief to this Court, Loehle cites three DPS policies. First, Policy 17.02.2 which provides, in full, that

> [s]worn members of the Department are expected to make reasonable efforts to apprehend violators who flee or otherwise attempt to elude. However, the Department recognizes and respects the value and special integrity of each and every human life. In vesting members with the lawful authority to use force in the protection of the public welfare, a special balancing of all human interests is required. Members, in the performance of their duty, must use only the force that is reasonably necessary to bring an incident under control. It is paramount that members exercise prudent and sound judgment in their actions when engaging in pursuits. Members must comply with existing laws governing vehicle pursuits. At the same time, they must use sound discretion and good judgment in each pursuit. It must be understood that every violator will not be apprehended. In some situations the most professional and reasonable decision would be to terminate a pursuit in the interest of their own and the public's safety.

---

injures or kills any person during the pursuit, the law enforcement officer's pursuit shall not be the proximate cause or a contributing proximate cause of the damage, injury, or death caused by the fleeing suspect unless the law enforcement officer acted with reckless disregard for proper law enforcement procedures in the officer's decision to initiate or continue the pursuit."

Second, Policy 17.02.4 (A) which initially states that "[i]n determining the appropriateness, speed and extent of a pursuit, the sworn member must exercise great care to ensure that his or her actions are objectively reasonable." That policy then contains a listing of factors used to consider whether the member's actions are "objectively reasonable," two of which Loehle mentions: (1) "the nature of the offense committed by the suspect, the potential danger to the public if the suspect is not immediately apprehended and the probability of the suspect's arrest at a later date;" and (2) "[t]he existing traffic conditions, road surface and width, weather, visibility, road familiarity, type of area (urban, residential, rural) or any condition that would create additional dangers for present traffic or the public." And third, Policy 17.02.4 (B) (1) (a) which provides that "[t]he law permits sworn members who are engaged in pursuits to exceed the speed limit and to disregard other traffic regulations as necessary in apprehending the violator, but only: 1) [i]f the emergency lights and siren are employed, and 2) [t]he officer exercises due regard for the safety of all persons."

In sum, Loehle claims that DPS waived sovereign immunity because the troopers violated Policy 17.02.2 by chasing the suspect at excessive speeds and "blowing through multiple red lights" (claims which are not supported by Loehle's

6

citations to the record); the troopers violated Policy 17.02.4 (A) in initiating pursuit in heavy traffic, down a one-way street the wrong way when only a property crime – entering a stolen automobile – had been committed; and the troopers violated Policy 17.02.4 (B) (1) (a) by maintaining the pursuit despite the presence of an aerial unit to monitor the situation.

The trial court made findings of fact concerning the pursuit[3] and found that the troopers

> appropriately implemented the law enforcement policies of [DPS] when initiating apprehension of the stolen Jaguar, previously carjacked. When the suspect fled, none of the listed reasons to terminate pursuit as outlined in [DPS] Policy 17.02.04 (E) were present. Furthermore, [the troopers] acted with due regard during the pursuit by using [their] flashing lights and sirens and trying to apprehend suspects driving a stolen car known to have been recently involved in a violent crime.

As a result, the trial court concluded that the troopers faithfully implemented DPS's policies and procedures and DPS did not waive sovereign immunity pursuant to OCGA § 50-21-24 (6).

---

[3] The trial court also noted that it had "previously summarized the underlying facts giving rise to the subject accident and Complaint" in a prior order.

7

Evidence in the record supports the trial court's findings. Notably, one of the troopers involved in the pursuit[4] testified that his decision to initiate a traffic stop on the stolen vehicle was the result of his training in DPS's Pursuit Policy and his experience in apprehending fleeing motorists. The trooper further testified that, in the context of Policy 17.02.4 (A) and its various factors, he received word that the stolen vehicle was taken during a carjacking involving a firearm and that, as a result, he believed the suspects presented potentially lethal threats to the public. The trooper believed that the possibility of capturing the suspects would be low if the pursuit was discontinued because the suspects could not be tied to the stolen vehicle.[5]

The trooper also considered traffic conditions based upon his experience with traffic in the State Capitol area and determined that, in the middle of a weekday afternoon, traffic would be light. When the suspect turned left onto Capitol Avenue from MLK, proceeding the wrong way down a one-block portion of Capitol Avenue, the trooper again noted traffic conditions and observed no traffic coming down

[4] The second trooper involved in the pursuit, Trooper Chad LeCroy, was killed in the line of duty almost two years after the pursuit in this case.

[5] At the time of the pursuit, the trooper was unaware that the pursuit was being monitored by an Atlanta Police helicopter, but opined that the helicopter would not have been able to apprehend the suspects had they fled on foot - which they did after crashing into Loehle's vehicle.

8

Capitol Avenue and, therefore, a low risk of a head-on collision with other motorists. The trooper considered the factors for discontinuing a pursuit and he concluded that "the danger of permitting the suspects to escape outweighed the potential risk of the pursuit and, therefore, it was never 'too hazardous' to continue the pursuit."

Based on these factual findings, which are supported by evidence from the record, we conclude that the trial court correctly found that DPS did not waive sovereign immunity.[6] As a result, Loehle's first enumeration of error is without merit.

Moreover, Loehle's reliance on *Davis*, supra, 285 Ga. at 203-204, in support of his argument that DPS waived its immunity is misplaced, because that case is distinguishable on its facts. In *Davis*, a state trooper was traveling behind a pickup truck and began running radar on vehicles approaching him in the opposite lane. Id.

[6] Loehle's claim that the trial court applied the wrong standard in deciding that sovereign immunity had not been waived is unavailing. Loehle argues that "[t]he standard for sovereign immunity purposes is whether the claims arise out of the negligent implementation of and reckless disregard" for DPS policies. Therefore, Loehle contends the trial court's conclusion that troopers "faithfully implemented [DPS] policies and procedures" is erroneous. That argument ignores the totality of the trial court's findings, which include statements that the troopers "appropriately implemented the law enforcement policies of [DPS]" and that the troopers "acted with due regard during the pursuit." These conclusions are tantamount to a determination that the troopers did not negligently implement or recklessly disregard DPS policies. As a result, no further action is needed. See generally *Weickert v. Weickert*, 268 Ga. App. 624, 628-629 (2) (602 SE2d 337) (2004) (remand not necessary to require trial court to use exact language in conclusions of law).

The trooper used the pickup truck as cover "in a technique known as blocking." Id. at 204. When the pickup truck stopped and signaled a left turn, the trooper struck the pickup truck from behind. Id. Our Supreme Court noted that while DPS "has a policy of detecting and apprehending individuals who exceed the speed limit by use of radar and motor vehicles," the policy "obviously does not include directing the officer to strike any vehicle in his path in apprehending a speeder." *Davis*, supra, 285 Ga. at 206. Central to the Supreme Court's holding was evidence from a State Patrol Crash Review Board finding that the collision was preventable and that the trooper "did not operate his car 'in a manner consistent with policy and training.'" Id. In concluding that DPS waived sovereign immunity, the Supreme Court found that the trooper

> clearly was not acting pursuant to policy. Basically, he followed too closely and did not pay attention. This is not a policy decision, but rather simple, preventable negligence. Any such negligence was not a part of the formulated policy. Therefore, the State is subject to liability for injuries resulting from the negligence, if any, of the highway patrolman in colliding with Ms. Davis' vehicle.

(Citations, punctuation and quotations omitted). Id. at 206-207.

No such evidence exists in this case. To the contrary, the evidence reveals that the troopers in this case followed DPS policies concerning pursuits, including taking

10

into account "[t]he nature of the offense committed by the suspect, the potential danger to the public if the suspect is not immediately apprehended and the probability of the suspect's arrest at a later date" and "[t]he existing traffic conditions, road surface and width, weather, visibility, road familiarity, type of area (urban, residential, rural) or any condition that would create additional dangers for present traffic or the public."[7] Moreover, the record supports the trial court's finding that the troopers exercised due regard for the safety of others during the pursuit. Finally, unlike in *Davis*, the State Patrol Pursuit Critique in this case concluded that the trooper's actions were objectively reasonable.

2. Loehle also contends that the trial court erred in denying his spoliation motion against the City based on the Atlanta Police Department's destruction of audio recordings of the pursuit pursuant to the Department's retention schedule. We conclude that the trial court applied an erroneous legal theory in denying Loehle's motion, and we remand this case for further proceedings.

---

[7] See also *Blackston v. Georgia Dept. of Public Safety*, 274 Ga. App. 373, 375, n. 10 (618 SE2d 78) (2005) (sovereign immunity applied to pursuit in which troopers followed suspect through stop signs and red lights, and "in[to] an oncoming lane of traffic," and which ended in the suspect's head-on collision with another vehicle); *Hilson v. Dept. of Public Safety*, 236 Ga. App. 638, 640-641 (512 SE2d 910) (1999).

In denying Loehle's motion against the City of Atlanta for spoliation of the audio recordings, the trial court found that Loehle failed to come forward with any evidence that the City had notice that Loehle contemplated litigation before the recordings were destroyed. In making that finding, the trial court specifically relied on the decision in *Craig v. Baily Brothers Realty, Inc.*, 304 Ga. App. 794, 796-797 (1) (697 SE2d 888) (2010), which held that, in order the meet the standard of proving spoliation, "the injured party must show that the alleged tortfeasor was put on notice that the party was contemplating litigation[.]" (Citation and punctuation omitted.). The Supreme Court of Georgia, however, recently disapproved of *Craig* and other Court of Appeals spoliation cases to the extent that those cases erroneously held that a defendant's duty arises *only* when the injured party has provided actual or express notice of litigation. See *Phillips v. Harmon*, 297 Ga. 386, 398 (II), n.10 (774 SE2d 596) (2015).

> In *Phillips*, the Supreme Court held that, in addition to actual notice,
>
> [n]otice that the plaintiff is contemplating litigation may also be derived from, . . . other circumstances, such as the type and extent of the injury; the extent to which fault for the injury is clear; the potential financial exposure if faced with a finding of liability; the relationship and course of conduct between the parties, including past litigation or threatened

litigation; and the frequency with which litigation occurs in similar circumstances.

(Punctuation.) Id. at 397 (II).

Here, the trial court's denial of Loehle's spoliation motion was based on the erroneous legal theory that actual or express notice of litigation is required in spoliation cases, and this Court cannot affirm a judgment based on an erroneous legal theory. See *Phillips*, supra, at 397 (II); *Amin v. Guruom*, 280 Ga. 873, 875 (635 SE2d 105) (2006). Accordingly, we vacate the denial of Loehle's spoliation motion and remand this case for the trial court to reconsider that motion in light of the correct legal analysis as set forth herein.

*Judgment affirmed in part and vacated and remanded in part. Barnes, P. J. and Ellington, P. J., Dillard, McFadden and Branch, JJ., concur. Andrews, P. J., concurs as to Division 1 and dissents as to Division 2.*

A15A0991. LOEHLE et al. v. GEORGIA DEPARTMENT OF
PUBLIC SAFETY et al.

ANDREWS, Presiding Judge, concurring in part and dissenting in part.

1. I concur fully in Division 1 of the majority opinion which concludes that the trial court correctly found that the Georgia Department of Public Safety did not waive sovereign immunity. However, because the trial court properly denied Loehle's spoliation motion against the City of Atlanta based upon the arguments presented to it, and a remand is therefore unnecessary under the facts of this case, I respectfully dissent to Division 2.

2. Stated succinctly,

> the term 'spoliation' is used to refer to the destruction or failure to preserve evidence that is relevant to 'contemplated or pending litigation.' Such conduct may give rise to the rebuttable presumption that the evidence would have been harmful to the spoliator. However, in order for the injured party to pursue a remedy for spoliation, the spoliating party must have been under a duty to preserve the evidence at issue.

(Citations omitted). *Phillips v. Harmon*, 297 Ga. 386, 393-394 (774 SE2d 596) (2015). See also *Whitfield v. Tequila Mexican Restaurant No. 1*, 323 Ga. App. 801, 807 (6) (748 SE2d 281) (2013), overruled on other grounds, *Harmon*, 297 Ga. at 398.

Of particular relevance here, "[t]The trial court has wide discretion in resolving spoliation issues, and we will not disturb its ruling absent abuse." *Kitchens v. Brusman*, 303 Ga. App. 703, 705 (1) (694 SE2d 667) (2010).

Here, the trial court found that: (1) the collision between the plaintiffs and the driver of the stolen vehicle occurred on January 6, 2009; (2) pursuant to Atlanta Police Department Policy Manual, Standard Operating Procedure 4.18.3 (1), audio recordings "are kept for approximately 120 days before being reused," meaning that the recording would have been reused on or about May 6, 2009; (3) Loehle submitted ante litem notice to the City on June 26, 2009; and (4) the City received Loehle's ante litem notice on or about June 29, 2009. Loehle filed its civil action against the City on December 13, 2010. It was not until December 12, 2012, in an email from the City in response to Loehle's discovery requests, that Loehle learned that the audio recordings had been destroyed. As a result, the trial court concluded that the City had no notice that Loehle contemplated litigation and, as a result, "was not under a duty to preserve the recordings of the radio transmissions and merely complied with its policy of reusing tapes after 120 days have elapsed."

Of course, the trial court's conclusion was based upon the arguments presented to it, and at no point during briefing to the trial court (or, for that matter, to this Court)

2

did Loehle argue that the City had notice of Loehle's claim by any other means other than the ante litem notice (which arrived after the 120-day period in APD's policies). Based upon the state of our law at the time this case was litigated in the trial court, such an argument concerning alternate notice could have been made. See *Silman v. Associates Bellemeade*, 286 Ga. 27 (685 SE2d 277) (2009); *Baxley v. Hakiel Indus.*, 282 Ga. 312, 313-314 (647 SE2d 29) (2007). It was not. In this context, *Harmon* does not supply a basis for remand to permit new arguments that could have been previously raised. And because Loehle has failed to demonstrate that the trial court abused its discretion, see *Kitchens*, 303 Ga. App. at 705 (1), I would affirm the trial court' order denying Loehle's motion for spoliation.