**FOURTH DIVISION**
**DILLARD, C. J.,**
**DOYLE, P. J., AND BETHEL, J.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**September 27, 2018**

# In the Court of Appeals of Georgia

A18A1190. BRITT v. JACKSON et al.

BETHEL, Judge.

This case arises out of an auto accident. Sharhod Britt was a passenger in a vehicle that collided with another vehicle driven by a Georgia Department of Corrections (DOC) probation officer. Britt brought this negligence action against DOC, alleging that its employee caused the accident giving rise to his injuries. DOC filed a motion to dismiss on the basis that the lawsuit was barred by sovereign immunity. Following a hearing, the trial court granted DOC's motion to dismiss the action for lack of subject matter jurisdiction. On appeal, Britt argues that the trial court committed reversible error by failing to consider certain evidence in its findings of facts, by failing to consider whether the law enforcement exception to immunity applies if the vehicle driven by the probation officer was not an emergency vehicle,

and by failing to apply controlling precedent to the facts of the case. Because the record supports the factual findings of the trial court, and because Britt has made no showing that sovereign immunity is waived, we affirm.

"We review de novo a trial court's grant of a motion to dismiss on sovereign immunity grounds." *James v. Ga. Dept. of Pub. Safety*, 337 Ga. App. 864, 865 (1) (789 SE2d 236) (2016) (citation and punctuation omitted). "However, factual findings by the trial court in support of [its] legal decision are sustained if there is evidence authorizing them, and the burden of proof is on the party seeking the waiver of immunity." *Id*.

So viewed, the record reveals that on December 15, 2013, Probation Officer Lance Ward and his partner, Probation Officer Jarrod Roberts, were conducting field visits on felony probationers in Tift County. Ward was driving a black Chevrolet Tahoe issued by the Georgia Department of Corrections (DOC). The probation officers were equipped with a radio that allowed them to communicate with the 911 dispatch in Tift County. That evening, Ward and Roberts heard a 911 dispatcher call over the radio that there had been shots fired at a trailer park near their location. The 911 dispatcher stated that local law enforcement officers were on the lookout for

suspects driving a brown SUV and a brown El Camino. The El Camino was driven by Deon Jackson, and Sharhod Britt was riding in the bed of the vehicle.

Ward and Roberts decided to assist local law enforcement in locating the vehicles and suspects believed to be involved in the reported shooting. Ward proceeded to drive to the area where the dispatcher said one of the suspect vehicles had been located. At that time, Ward's vehicle was traveling behind two Tift County Sheriff patrol cars which had their lights and sirens activated. Behind Ward's vehicle was another Tift County Sheriff patrol car. The headlights and warning lights on Ward's vehicle were also activated.

Ward then heard a call over the radio that law enforcement officers had made observed the brown SUV and suspects from that vehicle were running away. Believing the suspects would run to the rear entrance of the trailer park in order to escape, Ward decided to drive to the rear of the trailer park to block the suspects' path. At that time, one Tift County Sheriff patrol car was traveling behind Ward's vehicle with its lights and sirens still activated. Ward then noticed that the vehicle in front of him appeared to be an El Camino which matched the description of the second suspect vehicle described by the 911 dispatcher. Anticipating that the deputy sheriff in the patrol car behind him would conduct a stop of the El Camino, and in an

3

effort to get out of the deputy's way, Ward, with his warning lights deactivated, attempted to pass the El Camino on the left so that the deputy could conduct a traffic stop. Ward did not engage his turn signals prior to passing the El Camino. Meanwhile, as Ward attempted to pass the El Camino, the driver of the El Camino turned left in front of Ward's vehicle without any warning. Although Ward attempted to avoid a collision, Ward's vehicle struck the rear quarter panel on the driver side of the El Camino. The impact caused the El Camino to spin out and come to a rest on the curb. Britt, who was in the bed of the vehicle at the time of impact, complained of injuries at the scene.

Immediately following the collision, the sheriff's deputy who had been traveling behind Ward's vehicle conducted the traffic stop with occupants of the El Camino while Ward and Roberts checked the suspects for weapons and secured the scene. Georgia State Patrol was notified of the accident, responded to the scene, and conducted an investigation. The State Trooper gave Ward a verbal warning for improper passing.

Britt later filed the complaint for damages giving rise to this appeal against DOC. DOC moved to dismiss the action for lack of subject matter jurisdiction.

Following a hearing, the trial court granted DOC's motion to dismiss. This appeal followed.

1. Britt first argues the trial court erred by failing to consider certain evidence in the record when making its factual findings. Specifically, Britt contends that the trial court's failure to recite in its findings of fact that it had reviewed the dash cam video of the incident denied him a full review of the evidence and thus prejudiced him. This argument is directly contradicted by the facts in the record, and therefore fails.

The record shows that along with its motion to dismiss Britt's action, DOC attached a copy of the dash cam video as an exhibit to the motion. During the hearing on the motion to dismiss, the following exchanges occurred between counsel for the parties and the trial court:

BRITT'S COUNSEL: Well, you're going to see the video anyway, Judge.

COURT: I've already seen the video.

BRITT'S COUNSEL: Ah, okay.

COURT: And just to make sure, I've seen the video. And your client was the one lying or sitting in the back of the El Camino; correct?

BRITT'S COUNSEL: Who bounced up at the time of impact, yes.

COURT: Okay. I remember seeing him. I remember seeing him in the back[.]

. . .

DOC'S COUNSEL: Thank you, your honor. I understand you've watched the video. So [Britt's counsel] and I --

COURT: Yeah. I had to get my intern to figure out the computer programming necessary to be able to do that, but . . .

DOC'S COUNSEL: Okay. So [Britt's Counsel] and I, we're going to ask if you needed to watch it again, but if you don't we're good.

COURT: No, I'm good.

In its order granting DOC's motion to dismiss, the trial court prefaced its findings of fact by stating, "[b]ased upon the pleadings and evidentiary record established at the hearing, this Court makes the following findings of fact and conclusions of law." Here, the record reflects that the pleadings and evidentiary record established at the hearing included the dash cam video footage. Britt argues that by not explicitly stating in its order that the trial court reviewed the dash cam

6

video footage, the trial court effectively ignored the footage. However, Britt cites no case law that requires trial courts to specify each piece of evidence in the record upon which it based its findings of fact. Moreover, the trial court's supposed failure to expressly state in its order that it reviewed the dash cam video does not support Britt's claim for reversal. *See Murrey v. Specialty Underwriters, Inc.*, 233 Ga. 804, 806 (213 SE2d 668) (1975) (the trial court's order does not have to recite the grounds upon which the motion to dismiss were sustained so long as the judgment is authorized for any reason).

2. Britt next argues that the trial court erred by concluding that DOC was entitled to immunity under the law enforcement exception of OCGA § 50-21-24 (6). Specifically, Britt argues the trial court failed to consider whether the record demonstrated that Ward was driving an emergency vehicle as defined by statute.

Under the Georgia Constitution, DOC is entitled to sovereign immunity to the extent that such immunity has not been waived through an act passed by the General Assembly. *See* Ga. Const. of 1983, Art. I, Sec. II, Par. IX (a), (e). The Georgia Tort Claims Act ("GTCA") set forth at OCGA § 50-21-20 *et seq.* provides for a limited waiver of the State's sovereign immunity for the torts of State officers and employees acting within the scope of their official duties or employment. GTCA sets forth

7

specific exceptions to the waiver under which the State retains sovereign immunity from suit. *See* OCGA §§ 50-21-23; 50-21-24. Any suit against the State barred by sovereign immunity is subject to dismissal for lack of subject matter jurisdiction. *See Steele v. Ga. Dept. of Transp.*, 271 Ga. App. 374, 374-375 (609 SE2d 715) (2005).

OCGA § 50-21-24 (6) provides that "[t]he state shall have no liability for losses resulting from . . . the method of providing, law enforcement, police, or fire protection[.]" Our Supreme Court has interpreted this statute to mean that the State is immune from liability for negligence resulting in an injury that occurs during implementation of a policy, if the defect lies in the policy itself. *Ga. Dept. of Pub. Safety v. Davis*, 285 Ga. 203, 206 (676 SE2d 1) (2009). However, the state is not immune from liability where, in implementing a non-defective policy, the state's employee negligently acts in a way not authorized by policy. *See Dept. of Pub. Safety v. Johnson*, 343 Ga. App. 22, 23 (806 SE2d 195) (2017) (citation omitted).

Here, Britt's complaint did not concern the substance of DOC's policy for allowing probation officers to provide assistance to other law enforcement agencies, but rather alleged that Ward was negligent in following the policy. In its motion to dismiss, DOC challenged the trial court's subject matter jurisdiction, arguing that because Ward's actions were consistent with DOC's non-defective policy, DOC

8

retained sovereign immunity under GTCA. As is the case here, when subject matter jurisdiction is challenged on this basis, "the trial court may receive evidence . . . and make relevant factual findings to decide the threshold issue of whether a defendant's entitlement to sovereign immunity deprives the court of subject matter jurisdiction." *Johnson*, 343 Ga. App. at 23 (citing *James v. Ga. Dept. of Public Safety*, 337 Ga. App. 864, 867 (2) (789 SE2d 236) (2016)) (punctuation omitted).

Britt contends that in order for the trial court to reach a proper conclusion as to whether DOC retains sovereign immunity in this case, the trial court must consider whether Ward violated Georgia law in his operation of an emergency vehicle. Britt argues that because Ward violated Georgia traffic laws, Ward's actions violated DOC policy, and thus the law enforcement exception of GTCA does not apply. Britt's argument misinterprets the applicability of OCGA § 50-21-24 (6). The issue before us does not depend on whether Ward violated any Georgia traffic laws when implementing DOC policy, but whether he violated DOC policy when he assisted local law enforcement and attempted to pass a vehicle without warning. Here, because the record supports the trial court's conclusion that Ward did not violate DOC policy, the trial court did not err in determining that DOC retained its sovereign immunity.

9

This record reflects that DOC policy authorizes probation officers to provide assistance to other law enforcement agencies. When assisting other law enforcement agencies, DOC probation officers are expected to use their professional judgment and discretion based on their law enforcement training and DOC procedures.[1] DOC policy allows probation officers to take on supportive roles when assisting other law enforcement agencies. DOC policy does not authorize probation officers to conduct traffic stops. There was evidence before the trial court showing that an internal review of Ward's actions found that he complied with DOC policy.

Based on the above evidence, the trial court was authorized to conclude that DOC's policies permitted Ward to provide assistance to local law enforcement and permitted the actions taken by Ward in rendering assistance. The trial court noted that Ward did not conduct a traffic stop, moved his vehicle out of the way so that local law enforcement could conduct the traffic stop, and maintained a supportive role throughout the incident. The trial court found that DOC's policies permitted Ward's actions and the exercise of his discretion in following those policies.

---

[1] DOC probation officers are Police Officer Standards and Training ("POST") certified law enforcement officers. POST certified law enforcement officers are authorized to exercise the power of arrest and their duty includes "the preservation of public order, the protection of life and property, and the prevention, detection, or investigation of crime[.]" OCGA § 35-8-2 (8) (A).

While we do recognize there is some evidence in the record to suggest that Ward's actions may have violated Georgia traffic laws when assisting local law enforcement, the issue before us is whether the record supports the trial court's conclusion that Ward did not negligently implement DOC policy. We find that the record supports the trial court's conclusion. *See Loehle v. Ga. Dept. of Pub. Safety*, 334 Ga. App. 836, 841 (1) (780 SE2d 469) (2015) ("Based on these factual findings, which are supported by evidence from the record, we conclude that the trial court correctly found that [the Department] did not waive sovereign immunity." (footnote omitted)).

3. Lastly, Britt contends that the trial court erred by failing to apply controlling precedent to the facts of this case. Specifically, Britt contends that had the trial court applied our Supreme Court's holding in *Ga. Dept. of Pub. Safety v. Davis*[2] to the facts of this case, the law enforcement exception would not apply. This argument is unavailing.

In *Davis*, a Georgia State Trooper drove behind a mail truck, which he used as cover, in order to run radar on approaching vehicles. *Id*. at 204. The state trooper did not realize that the mail truck had stopped in front him and collided with the truck.

_____

[2] 285 Ga. 203, 203 (676 SE2d 1) (2009).

*Id*. The Supreme Court affirmed this Court's prior holding that the State was subject to liability for the injuries resulting from the negligence of the state trooper in colliding with the mail truck because the record contained evidence that the state trooper was not acting pursuant to policy. *Id*. at 206-207.

In contrast, the facts in Davis are clearly distinguishable from the facts here. In *Davis*, there was no evidence that any policy permitted the state trooper's actions. Here, there was evidence that DOC policy permitted Ward, in the exercise of his discretion, to assist local law enforcement in the manner in which he did. Ward's supervisor averred in her affidavit and testified at the hearing on the motion to dismiss that Ward's actions were consistent with DOC policy in assisting local law enforcement and responding to emergency calls from dispatch. Additionally, unlike the internal investigation of the state trooper in *Davis*, an internal investigation of the collision determined that Ward's actions complied with DOC policy and were proper.

Although Britt disputes the factual findings of DOC's internal investigation and ultimately the trial court, we find that the trial court's factual findings were authorized by the evidence. It is not the job of this Court to substitute our view of disputed facts where the evidence supports the trial court's conclusion. Accordingly,

12

the trial court did not err in granting DOC's motion to dismiss for lack of subject matter jurisdiction.

*Judgment affirmed. Dillard,C. J., and Doyle, P. J., concur.*