**THIRD DIVISION**
**DOYLE, P. J.,**
**REESE, J., and SENIOR APPELLATE JUDGE PHIPPS**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.** **https://www.gaappeals.us/rules**

**June 13, 2022**

# In the Court of Appeals of Georgia

A22A0500. BRYANT v. GEORGIA PORTS AUTHORITY.

REESE, Judge.

Benjamin Bryant appeals from an order of the State Court of Chatham County, which found that the Georgia Ports Authority ("GPA") was entitled to sovereign immunity under OCGA § 50-21-24 (6) of The Georgia Tort Claims Act (the "Act")[1] and dismissed Bryant's negligence action. For the reasons set forth infra, we affirm.

"We review de novo a trial court's ruling on a motion to dismiss based on sovereign immunity grounds, which is a matter of law. Factual findings are sustained

---

[1] OCGA § 50-21-20 et seq.

if there is any evidence supporting them, and the burden of proof is on the party seeking the waiver of immunity."[2]

So viewed, the record shows that, on June 13, 2018, Bryant was working as a linesman for International Longshoresmen's Association ("ILA") Local 1414 on the property of GPA, tying the docking lines of the M/V MSC Spain at Container Berth 4 as the vessel was arriving. Bryant and fellow longshoreman, Parcardi Trappio, were tying up "heaving lines" that are used to pull each of the mooring lines out of the water. At the time of the incident, Bryant and Trappio had left a heaving line in the roadway.

Officer James Deloach of the GPA Police Department was on shift in uniform, working "dock patrol," which involved patrolling the entire dock and looking for anything out of the ordinary, as well as assisting during the docking and sailing of vessels. As part of dock patrol, Deloach would sometimes park his vehicle with its blue lights activated near the loading or docking vessel "as a precautionary measure to let [jockey truck] drivers know . . . there's somebody working in there [and to be] careful."

---

[2] *Dept. of Transp. v. Thompson*, 354 Ga. App. 200 (840 SE2d 679) (2020) (citation and punctuation omitted).

On the afternoon of June 13, Deloach was assisting in the docking of M/V MSC Spain, where Bryant and Trappio were tying lines. One of the line handlers asked Deloach to "go down and turn [his] blue lights on to let the drivers know that they were down there." Deloach agreed to assist by pulling up in his marked patrol truck and activating his blue lights while he stayed in his vehicle.

Francine Johnson, another longshoreman with ILA 1414, was driving a jockey truck to the vessel MOL Magnificence, which was docked one container berth over. Johnson testified that she saw Deloach in his marked patrol vehicle, but that he "waved her on through[ ]" the area where Bryant was working. Although Johnson proceeded slowly, she drove over the slack heaving line without seeing it and without realizing that it wrapped around one of the wheels of the flatbed she was pulling. When that happened, the line pulled tight and tripped Bryant, knocking him to the ground and causing his injuries.

Bryant sued the GPA for damages, and the GPA filed a motion to dismiss the complaint, alleging, inter alia, that it was entitled to sovereign immunity. Following a hearing, the trial court granted the motion. This appeal followed.

"The party seeking to benefit from a waiver of sovereign immunity has the burden to establish waiver, and any suit brought to which an exception applies is

subject to dismissal pursuant to OCGA § 9-11-12 (b) (1) for lack of subject matter jurisdiction."[3] As noted above, we sustain the trial court's factual findings if there is any evidence to support them, and we review the court's legal conclusions de novo.[4] With these guiding principles in mind, we turn now to Bryant's claim of error.

Bryant argues that the trial court erred in finding that the exception in OCGA § 50-21-24 (6) applied to the general waiver of immunity found in OCGA § 50-21-23 (a).[5]

Subject to exceptions[6] and limitations,[7] the Act waives sovereign immunity for suits to recover monetary damages for the torts of state officers and employees while acting within the scope of their official duties or employment.[8] Relevant here, "[t]he

---

[3] *Southerland v. Ga. Dept. of Corrections*, 293 Ga. App. 56, 57 (666 SE2d 383) (2008) (punctuation and footnote omitted).

[4] Id.

[5] Bryant does not dispute that "the Georgia Ports Authority is a state agency entitled to the defense of sovereign immunity." *Miller v. Ga. Ports Auth.*, 266 Ga. 586 (470 SE2d 426) (1996).

[6] See OCGA § 50-21-24.

[7] See, e.g., OCGA § 50-21-29 (b).

[8] OCGA § 50-21-23 (a).

state shall have no liability for losses resulting from . . . the failure to provide, or the method of providing, law enforcement, police, or fire protection[.]"[9]

Bryant seeks to hold the GPA liable for Deloach's negligence in "directing the jockey truck to drive in the area where ropes used to pull the docking lines from the M/V MSC Spain were lying on the ground." Directing traffic is "necessarily a police function."[10]

The Supreme Court of Georgia has construed OCGA § 50-21-24 (6):

as authorizing the application of sovereign immunity to the making of policy decisions by state employees and officers including those relating to the amount, disbursement, and use of equipment and personnel to provide law enforcement, police or fire protection services, and to the acts and omissions of state employees and officers executing and implementing those policies.[11]

---

[9] OCGA § 50-21-24 (6).

[10] *Sommerfield v. Blue Cross & Blue Shield*, 235 Ga. App. 375, 377 (1) (509 SE2d 100) (1998).

[11] *Ga. Forestry Comm. v. Canady*, 280 Ga. 825, 830 (632 SE2d 105) (2006); see also *Ga. Dept. of Pub. Safety v. Davis*, 285 Ga. 203, 206 (676 SE2d 1) (2009) ("The state is immune from liability if the alleged negligence causing an injury, which injury occurs during implementation of policy, lies in some defect in the policy itself. The state is not immune from liability where its employee is implementing a non-defective policy, but does so in a negligent manner.").

5

The Supreme Court later elaborated, in *Georgia Department of Public Safety v. Davis*, "if the allegedly negligent act resulted from the manner in which a policy regarding police protection was implemented, the alleged losses are not a result of that implementation and, therefore, the state is not immune from liability."[12] Thus, GPA is immune if the alleged negligence causing an injury lies in some defect in the policy itself, but GPA is not immune if Officer Deloach was implementing a non-defective policy in a negligent manner.[13] Immunity is unavailable if Deloach's allegedly negligent act or omission was not authorized by any policy.[14]

Bryant argues that the Supreme Court's decision in *Davis* is controlling. In that case, a state trooper was "running radar" to catch speeders and using a rural mail carrier's pickup truck as a cover to check oncoming traffic.[15] The trooper did not notice in time that the carrier had stopped, and he collided with her truck.[16] The Department of Public Safety argued that it was immune from liability because the

---

[12] 285 Ga. at 205.

[13] Id. at 206.

[14] Id.

[15] *Davis*, 285 Ga. at 203-204.

[16] Id. at 204.

trooper was executing his law enforcement duty to enforce the speed limit by using the method of moving radar.[17] "This policy, however, obviously [did] not include directing the officer to strike any vehicle in his path in apprehending a speeder."[18] The Supreme Court thus upheld the denial of the Department's motion for summary judgment because the officer's negligence in following too closely and not paying attention was not part of the formulated policy.[19]

*Davis* is distinguishable from this case. In *Davis*, there was evidence that the state trooper had violated policy.[20] Here, the record supports the trial court's conclusion that Officer Deloach did not violate GPA policy when he parked his marked patrol vehicle with his blue lights flashing as a "precautionary measure," even assuming that he waved Johnson through the area where Bryant was working. "[T]here was evidence that [GPA] policy permitted [Deloach], in the exercise of his discretion, to assist . . . in the manner in which he did."[21]

---

[17] *Dept. of Pub. Safety v. Davis*, 289 Ga. App. 21, 23 (656 SE2d 178) (2007), aff'd by *Davis*, 285 Ga. at 207.

[18] *Davis*, 285 Ga. at 206 (citations and punctuation omitted).

[19] Id. at 206-207.

[20] *Davis*, 285 Ga. at 206-207.

[21] *Britt v. Jackson*, 348 Ga. App. 159, 165 (3) (819 SE2d 677) (2018).

The GPA's policies were that, when directing traffic, officers exercise "discretion, based on what needs to be done, [to] then with hand manipulation, [to] direct[ ] vehicles in which direction they wish them to go or in some cases stopping vehicles." Officers had discretion in how they assisted during vessel docking, depending on the specific location of the vessel and other factors that were "different for every vessel given a variety of reasons[.]" Thus, the record supports the trial court's finding that Deloach was executing his law enforcement duty in compliance with the GPA's policies. Because Bryant is seeking damages from the implementation of these policies, the trial court did not err in determining that the GPA retained its sovereign immunity.[22]

*Judgment affirmed. Doyle, P. J., and Senior Appellate Judge Herbert E. Phipps concur.*

---

[22] See *Britt*, 348 Ga. App. at 163-164 (2).