**THIRD DIVISION**
**MILLER, P. J.,**
**MCFADDEN and MCMILLIAN, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**July 12, 2016**

# In the Court of Appeals of Georgia

A16A0018. JAMES v. GEORGIA DEPARTMENT OF PUBLIC SAFETY.

MCFADDEN, Judge.

Latricka Sloan died from injuries sustained when the car she was driving crashed as she fled from Georgia State Patrol officers in a high-speed chase. Sloan's adult daughter, Breshonda James, on behalf of herself and her minor siblings, brought this wrongful death action against the Georgia Department of Public Safety ("the Department"), the state agency that oversees the day-to-day operations of the Georgia State Patrol. In the action, James alleged that one of the officers negligently failed to comply with the Department's pursuit policy by continuing the chase and executing a Precision Immobilization Technique ("PIT maneuver") to stop Sloan's car. The trial court granted the Department's motion to dismiss the action for want of subject

matter jurisdiction on the ground that the Department had sovereign immunity. James appeals.

James argues that the trial court erred in making pre-trial findings of fact in ruling on the motion to dismiss, but the Georgia Civil Practice Act permitted the trial court to make such findings. James also argues that the trial court should have disregarded certain witnesses' testimony under the rule governing self-contradictory testimony, but that rule does not apply because those witnesses are not parties to this case. As detailed below, the record contains evidence supporting the trial court's determination that sovereign immunity applied. In fact, James concedes that factual disputes exist on the issue. Given the evidence – albeit disputed – supporting the trial court's ruling, our standard of review requires us to affirm.

1. *Standard of review, facts, and procedural background.*

"We review de novo a trial court's grant of a motion to dismiss on sovereign immunity grounds[.]" *Pelham v. Bd. of Regents &c.*, 321 Ga. App. 791 (743 SE2d 469) (2013). "However, factual findings by the trial court in support of [his] legal decision are sustained if there is evidence authorizing them, and the burden of proof is on the party seeking the waiver of immunity." *Loehle v. Ga. Dept. of Pub. Safety*, 334 Ga. App. 836, 836-837 (780 SE2d 469) (2015) (citations omitted). Accord *Ga.*

2

*Dept. of Transp. v. Kovalcik*, __ Ga. App. __, __ (__ SE2d __) (Case No. A15A2222, decided Mar. 28, 2016); *Diamond v. Dept. of Transp.*, 326 Ga. App. 189, 190 (1) (756 SE2d 277) (2014); *Pak v. Ga. Dept. of Behavioral Health &c.*, 317 Ga. App. 486 (731 SE2d 384) (2012); *Sadler v. Dept. of Transp.*, 311 Ga. App. 601, 603 (716 SE2d 639) (2011).

We are not persuaded by James's argument that, in reviewing the trial court's ruling, we must view the factual allegations in her complaint as true to determine whether the complaint showed with certainty that she would not be entitled to relief under any state of facts that could be proven in support of her claim. That standard of review is appropriate for a ruling on a motion to dismiss for failure to state a claim under OCGA § 9-11-12 (b) (6), see *Bonner v. Peterson*, 301 Ga. App. 443 (687 SE2d 676) (2009), or for a ruling on a motion to dismiss for lack of subject matter jurisdiction under OCGA § 9-11-12 (b) (1) where the trial court has not made factual findings. See *McCoy v. Ga. Dept. of Admin. Svcs.*, 326 Ga. App. 853 n. 1 (755 SE2d 362) (2014); *Pelham*, 321 Ga. App. at 791 n. 1. In this case, however, the Department moved to dismiss for lack of subject matter jurisdiction and the trial court made factual findings in ruling on that motion. See generally *Considine v. Murphy*, 297 Ga. 164, 167 (1) n. 2 (773 SE2d 176) (2015) (ruling on motion to dismiss for lack of

3

subject matter jurisdiction is subject to different standard of review than ruling on motion to dismiss for failure to state a claim); *Bonner*, 301 Ga. App. at 443 (same). Cases cited by James in which the trial court's ruling was based solely on the allegations in the complaint are therefore inapposite. See, e.g., *Oconee Community Svc. Bd. v. Holsey*, 266 Ga. App. 385 (597 SE2d 489) (2004); *Ardizonne v. Dept. of Human Resources*, 258 Ga. App. 858 (575 SE2d 738) (2002); *Ga. Military College v. Santamorena*, 237 Ga. App. 58 (514 SE2d 82) (1999).

Accordingly, as stated above, we consider on appeal whether there is evidence to support the trial court's factual findings. *Loehle*, 334 Ga. App. at 836-837. Those factual findings are summarized as follows, and our review of the record reveals evidence supporting them.

On January 22, 2011, at about 10 p.m., Sloan approached a roadblock in her vehicle, made a U-turn, and accelerated away from the roadblock. Two Georgia State Patrol officers pursued her in vehicles with functioning blue flashing lights and audible sirens, and functioning radios by which the officers maintained car-to-car contact during the pursuit. Soon after the pursuit began, one of the officers (hereinafter the "primary pursuing officer") passed the other officer (hereinafter the "secondary pursuing officer") and took the lead in the pursuit. The primary pursuing

4

officer asked the secondary pursuing officer to notify the Department's communications center of the pursuit. At the time of the pursuit, the officers did not know Sloan's identity.

The pursuit lasted for 4.8 miles, during which at least one of the officers maintained visual contact with Sloan's vehicle. The officers observed Sloan violate several traffic laws and drive in an erratic and dangerous manner, including exceeding the speed limit, failing to obey traffic signs and lights, and driving on the wrong side of the road. In the primary pursuing officer's opinion, these actions could place other motorists at risk of a serious accident. The officers, however, did not encounter any other traffic during the pursuit, and the condition of the road did not make the pursuit too hazardous to continue.

The primary pursuing officer was familiar with the traffic patterns of an approaching road, which he anticipated would have a high volume of traffic. He believed that there was a need to stop Sloan before she reached that road given her erratic and dangerous driving; that continuing the pursuit presented a greater danger than the danger associated with ending the pursuit through a PIT maneuver; and that alternative methods of ending the pursuit were not feasible. Approximately one mile before the intersection with the high-traffic road, the primary pursuing officer

5

performed a PIT maneuver, in which he intentionally struck Sloan's vehicle. This caused Sloan's vehicle to leave the roadway and overturn. Sloan was killed.

An investigative division of the Georgia State Patrol investigated the circumstances of the crash and concluded that the officer who had performed the PIT maneuver acted in accordance with the Department's pursuit policy. The Georgia State Patrol's commanding officer reviewed that investigation and agreed with its conclusion.

After James filed a complaint against the Department alleging that the primary pursuing officer had acted negligently in pursuing Sloan and performing the PIT maneuver, the Department moved to dismiss for lack of subject matter jurisdiction, see OCGA § 9-11-12 (b) (1), arguing that it was entitled to sovereign immunity. Both parties submitted evidence in the form of affidavits and deposition testimony on the issue of sovereign immunity. After considering this evidence, the trial court determined that the Department was entitled to sovereign immunity and granted the motion to dismiss. James appeals, arguing that the trial court should not have decided the issue before trial given disputes in the evidence, and that the trial court should have disregarded some witness testimony. She also challenges the merits of the trial court's dismissal of the action.

6

2. *Pre-trial determination of disputed facts.*

James challenges the trial court's act of making pre-trial determination of disputed facts in ruling on the motion to dismiss for lack of subject matter jurisdiction. She argues that, instead of making factual findings, the trial court merely should have viewed her complaint to determine whether she would be entitled to relief under any state of facts that could be proven in support of her claim. She also argues that the trial court should have deferred ruling on the motion until trial, and she argues that a jury, rather than the trial court, should have decided some of the factual disputes pertinent to the issue of sovereign immunity. But as detailed below, Georgia's Civil Practice Act authorized the procedure used by the trial court, and James has shown no abuse of discretion.

A challenge to subject matter jurisdiction is a matter in abatement, *Stivali v. Aquiport Aylesbury*, 244 Ga. App. 389 (535 SE2d 551) (2000), and the Civil Practice Act permits a defendant to move to dismiss a complaint on that ground. OCGA § 9-11-12 (b) (1). See also *Diamond*, 326 Ga. App. at 190 (1) ("any suit brought to which an exception [to a waiver of sovereign immunity] applies is subject to dismissal pursuant to OCGA § 9-11-12 (b) (1) for lack of subject matter jurisdiction") (citation omitted). Such motion "shall be heard and determined *before* trial on application of

any party unless the court orders that the hearing and determination thereof be deferred until the trial." OCGA § 9-11-12 (d) (emphasis supplied). In considering a motion for lack of subject matter jurisdiction based on sovereign immunity, a trial court is not confined to the allegations of the complaint, as the court would be if considering a motion to dismiss for failure to state a claim under OCGA § 9-11-12 (b) (6). The trial court "may hear the matter on affidavits presented by the respective parties, [and] may direct that the matter be heard wholly or partly on oral testimony or depositions[,]" OCGA § 9-11-43 (b), and has broad discretion in conducting the preliminary hearing on the motion. See *Sherwood Mem. Park v. Bryan*, 142 Ga. App. 664 (236 SE2d 903) (1977). Accordingly, the trial court may receive evidence and make relevant factual findings to decide the threshold issue of whether a defendant's entitlement to sovereign immunity deprives the court of subject matter jurisdiction. See *Rivera v. Washington*, __ Ga. __, __ (__ SE2d __) (Case No. S15G0887, decided Mar. 25, 2016).

The trial court also has broad discretion in deciding whether to defer its determination on a threshold issue such as subject matter jurisdiction. *Ga. Power Co. v. Harrison*, 253 Ga. 212, 214-215 (2) (318 SE2d 306) (1984); *Dept. of Transp. v. Dupree*, 256 Ga. App. 668, 675 (1) (b) (570 SE2d 1) (2002). "Under OCGA § 9-11-

8

12 (d), the trial court may hear and determine a defense in abatement . . . prior to trial without submitting it to a jury, or may defer such hearing and determination until trial." *Parris v. Douthit*, 287 Ga. 119 (694 SE2d 655) (2010) (citations omitted). But even if deferred until trial, the determination remains one for the trial court, not the jury. See *Dupree*, 256 Ga. App. at 672 (1) (a) (determination of subject matter jurisdiction must be made by trial court before entry of judgment, and trial court may use jury's verdict only in advisory capacity); *Derbyshire v. United Builders Supplies*, 194 Ga. App. 840, 842-843 (1) (392 SE2d 37) (1990) (trial court erred in declining to decide jurisdictional question in favor of jury determination of the issue).

James argues that the trial court in this case should have deferred his determination on subject matter jurisdiction because of the degree to which that determination was factually intertwined with a determination of the merits of the case. Certainly the trial court could have deferred his ruling, and as we noted in our opinion in *Dept. of Transp. v. Dupree*, supra, 256 Ga. App. 668, deferral may be the "best approach" where these determinations are particularly intertwined. Id. at 672 (1) (b). Nevertheless, as our opinion in *Dupree* acknowledges, a trial court's exercise of discretion in this regard can encompass a decision *not* to defer the subject matter jurisdiction decision, even if the jurisdictional ruling effectively decides the issue of

9

liability. See id. at 672 (1) (a) & n. 1. James has not shown that the trial court abused his discretion in making a pre-trial determination of subject matter jurisdiction in this case.

In a supplemental brief, James also suggests that the trial court should not have made factual findings without receiving live testimony. However, James did not enumerate as error any ruling by the trial court regarding the nature of the evidence upon which the trial court based his jurisdictional determination. Moreover, although James states in her supplemental brief that the trial court "disallowed the parties to test the evidence through live testimony, she does not point to any place in the record where the trial court made such a ruling. She did not seek to introduce any live testimony at the hearing on the motion to dismiss. And as discussed above, the Civil Practice Act permitted the trial court to make his determination on written submissions. OCGA § 9-11-43 (b).

3. *Self-contradictory testimony rule.*

We find no merit in James's argument that the trial court was required to disregard testimony of two of the Department's witnesses under the self-contradictory testimony rule. That rule

states that: (1) the testimony of a party who testifies on their own behalf at trial is construed against them whenever it is self-contradictory, vague, or equivocal; and (2) whenever the only evidence in support of a claim or a defense is the favorable portion of a party's self-contradictory testimony, the other party is entitled to a directed verdict as a matter of law.

*Thompson v. Ezor*, 272 Ga. 849, 851 (1) (536 SE2d 749) (2000) (citations omitted). "This principle [also] applies in the context of a motion to dismiss on jurisdictional grounds," as well as in the summary judgment context. *Classic Commercial Svcs. v. Baldwin*, 336 Ga. App. 183, 186 (1) (784 SE2d 44) (2016) (citation omitted). But as our Supreme Court has made clear, the rule applies *only* to the testimony of a *party* to the litigation; it does not apply to the testimony of a non-party witness. *Thompson*, 272 Ga. at 851-853 (2).

James contends that the self-contradictory testimony rule should apply to the testimony of the primary and secondary pursuing officers, but neither officer is a party to this litigation. In fact, our Tort Claims Act prohibits the officers from being parties to this litigation. See OCGA § 50-21-25 ("A person bringing an action against the state under the provisions of this article must name as a party defendant only the state government entity for which the state officer or employee was acting and shall

11

not name the state officer or employee individually."); see also *Shekhawat v. Jones*, 293 Ga. 468, 470-471 (1) (746 SE2d 89) (2013) ("where a state employee commits a tort while acting within the scope of his employment with the [s]tate, the [s]tate through the employing government agency may be held liable, but the individual state employee may not") (citation omitted). James offers no argument or authority for the proposition that the self-contradictory testimony rule should apply to the testimony of non-party witnesses in this case, and we know of none.

4. *Sovereign immunity.*

Under Article I, Section II, Paragraph IX (e) of the Georgia Constitution of 1983, "sovereign immunity from suit extends to all state departments and agencies unless properly waived through an act passed by the General Assembly. . . . Sovereign immunity is waived by a legislative act only if the statutory language specifically provides that sovereign immunity is waived and the extent of such waiver." *Pelham*, 321 Ga. App. at 793 (1) (citations and punctuation omitted). The conditions and limitations of the statute that waives immunity must be strictly followed. *Ga. Dept. of Labor v. RTT Assoc.*, __ Ga. __, __ (2) (__ SE2d __) (Case No. S15G1780, decided May 23, 2016).

The Georgia Tort Claims Act, OCGA § 50-21-20 et seq.,

12

provides for a waiver of the state's sovereign immunity for torts committed by state officers and employees acting within the scope of their official duties or employment, "provided, however, that the state's sovereign immunity is waived subject to all exceptions and limitations set forth in this article." OCGA § 50-21-23 (a). . . . If a tort claim falls within the scope of any of the[ ] exceptions [set forth in OCGA § 50-21-24], it is barred by sovereign immunity.

*Pelham*, 321 Ga. App. at 794-795 (citation omitted); see *Diamond*, 326 Ga. App. at 190 (1). As a department of the state, the Department of Public Safety is subject to the waiver and the exceptions set forth in the Tort Claims Act. See *Bruton v. Dept. of Human Resources*, 235 Ga. App. 291, 293 (509 SE2d 363) (1998).

The trial court concluded that James's claims against the Department fell within the law enforcement exception to the Tort Claims Act's waiver of sovereign immunity. See OCGA § 50-21-24 (6). Alternatively, the trial court concluded that the claims also fell within the assault and battery exception to the waiver. See OCGA § 50-21-24 (7). Because the evidence authorized the trial court's conclusion that the law enforcement exception applied, and thus his conclusion that the case must be dismissed because the Department was entitled to sovereign immunity, we need not consider the trial court's alternative conclusion regarding the assault and battery exception.

13

(a) *Law enforcement exception.*

OCGA § 50-21-24 (6) provides that "[t]he state shall have no liability for losses resulting from . . . the method of providing[ ] law enforcement, police, or fire protection." "[O]ur construction of OCGA § 50-21-24 (6) should accomplish a balance between the inherently unfair and inequitable results from the strict application of sovereign immunity and the need to limit the [s]tate's exposure to tort liability that the General Assembly expressed as its goal in OCGA § 50-21-21." *Ga. Dept. of Pub. Safety v. Davis*, 285 Ga. 203, 204 (676 SE2d 1) (2009) (citation and punctuation omitted).

In *Loehle v. Ga. Dept. of Pub. Safety*, supra, 334 Ga. App. 836, another case involving a vehicle accident during a pursuit, we discussed the scope of this exception to the Tort Claims Act's waiver of sovereign immunity:

> [O]ur Supreme Court has construe(d) the exception to the waiver of sovereign immunity found in OCGA § 50-21-24 (6) as authorizing the application of sovereign immunity to the making of policy decisions by state employees and officers . . . and to the acts and omissions of state employees and officers executing and implementing those policies. Our Supreme Court highlighted the distinction between the formulation of a policy and an officer's adherence to the policy by noting that if the negligence causing an injury lies in the formulating of policy – i.e., the determining of the method of police protection to provide – the

14

government remains immune from liability. If, however, an officer or employee acts negligently in carrying out that policy, government liability may exist under the Tort Claims Act.

Id. at 837-838 (1) (citing *Davis*, supra, 285 Ga. at 205-206, and *Ga. Forestry Comm. v. Canady*, 280 Ga. 825, 830 (632 SE2d 105) (2006)). Like the plaintiff in *Loehle*, in this case James "does not challenge [the Department's] policies concerning pursuits. Rather, [she] contends that [the law enforcement officer who executed the PIT maneuver] failed to properly follow those policies. Accordingly, the sole issue is whether the [officer was] negligent in carrying out certain [Department] policies." *Loehle*, 334 Ga. App. at 838 (1) (citations and footnote omitted).

The Department policy at issue in this case explicitly gives officers discretion in conducting pursuits. This discretion extends to "determining the appropriateness, speed and extent of a pursuit" (requiring the officer to consider factors including "[t]he nature of the offense committed by the suspect, the potential danger to the public if the suspect is not immediately apprehended and the probability of the suspect's arrest at a later date"); to "discontinu[ing] a pursuit if, in the [officer's] opinion, the risk of continuing outweighs the danger of permitting the suspect to escape"; and to performing a PIT maneuver "[i]f the [officer] in pursuit determine[s]

15

that the fleeing vehicle must be stopped immediately to safeguard life and preserve public safety" and if "the danger from the continued pursuit is greater than the danger associated with . . . using the maneuver to end the pursuit[.]" The policy prohibits pursuits when "[e]mergency equipment or the radio is not functioning properly," or when "inmate(s) or person(s) in custody occupy [the pursuit] vehicle."

The evidence recited above authorized the trial court's finding that the officer's actions during the pursuit "were objectively reasonable and in compliance with [the Department's] pursuit policy" and that his "execution of the PIT maneuver to terminate the pursuit of Sloan was in compliance with the policy[.]" There was evidence in the record showing that the officer considered the factors set forth in the pursuit policy in deciding to continue the pursuit, and that none of the circumstances that would have prohibited a pursuit under the policy existed in this case. There also was evidence showing that an internal reviewing body found that the officer had complied with the pursuit policy.

It is true that James contests this evidence. She points to inconsistencies in the witness testimony. She questions whether the primary pursuing officer was right to delegate to another officer the task of notifying the communications center. She points to expert opinion testimony that the primary pursuing officer's actions did not

16

comply with the pursuit policy. She asks us to view the facts of this case similarly to *Davis*, supra, where the evidence showed that an officer "clearly was not acting pursuant to policy" when he "followed too closely and did not pay attention" while driving. 285 Ga. at 207 (citations and punctuation omitted).

But there is a crucial distinction between this case and *Davis*. In *Davis*, there was no evidence that the policy permitted the officer's actions. Id. Here, in contrast, there *was* evidence that the policy permitted the officer, in the exercise of his discretion, to continue the pursuit of Sloan and then execute a PIT maneuver to end the pursuit. In that regard, the facts of this case more closely resemble those in *Loehle*, supra, where there was evidence that an officer had considered the factors set forth in the pursuit policy and determined that it was appropriate to continue the pursuit, and there was evidence that an internal review concluded that the officer's actions were reasonable. 334 Ga. App. at 840-842 (1). We held in *Loehle* that this evidence was distinguishable from that in *Davis*, and we held that the evidence supported the trial court's conclusion that the officer did not negligently implement that policy. Id.

Simply put, and as James herself concedes, the evidence as to whether the officer was negligent in executing the pursuit policy was in dispute. That disputed

evidence included evidence that permitted the trial court to make the factual findings he made. We are not authorized to substitute our ruling on the disputed facts for that of the trial court. "Based on [the trial court's] factual findings, which are supported by evidence from the record, we conclude that the trial court correctly found that [the Department] did not waive sovereign immunity." *Loehle*, supra, 334 Ga. App. at 841 (1) (footnote omitted). Accordingly, the trial court did not err in dismissing the action for lack of subject matter jurisdiction. Id. at 837 (1).

(b) *Assault and battery exception.*

In light of our conclusion in Division 2 (a), above, we need not consider James's challenges to the trial court's alternative conclusion regarding the applicability of the "assault and battery exception" to the Tort Claims Act's waiver of sovereign immunity.

*Judgment affirmed. Miller, P. J., and McMillian, J., concur.*