**FIFTH DIVISION**
**MCFADDEN, P. J.,**
**RAY and RICKMAN, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**October 23, 2018**

# In the Court of Appeals of Georgia

A18A1175. JESCHKE et al. v. TURNSTONE GROUP, LLC et al.

MCFADDEN, Presiding Judge.

This appeal challenges a summary judgment order finding that a declaration of restrictive covenants applies to two lots in a subdivision. The record shows that there are no genuine issues of material fact as to the declaration's applicability to one of the lots, but there are genuine issues of material fact as to its applicability to the other lot. So we affirm in part and reverse in part.

1. *Facts and procedural posture.*

"On appeal from a grant of summary judgment, we conduct a de novo review of the evidence to determine if there exists a genuine issue of material fact and whether the undisputed facts, viewed in the light most favorable to the nonmoving

party, entitle the movant to judgment as a matter of law." *Lafontaine v. Alexander*, 343 Ga. App. 672, 673 (808 SE2d 50) (2017) (citation omitted).

So viewed, the evidence shows that Sunrise Trails, LLC acquired approximately 67.5 acres of land in Cherokee County that it planned to develop as a subdivision. On November 5, 2003, Sunrise Trails executed a deed to secure debt, which was then recorded on November 10, 2003, conveying the property to SouthBank, N. A. as security for a loan. On January 14, 2005, Sunrise Trails recorded a declaration of protective covenants, conditions, restrictions and easements for the subdivision. (hereinafter, "declaration of covenants"). Three weeks later, in February 2005, Sunrise Trails filed its final plat for the subdivision, referencing the recorded declaration of covenants and dividing the property into 35 residential lots, streets, and common areas that included horse trails. Thereafter, some of the residential lots were sold according to the common subdivision scheme established by the plat and declaration of covenants, including the sale of a lot to Appellants Gary and Mary Jo Jeschke on December 23, 2009.

Sunrise Trails subsequently defaulted on the loan secured by the deed in favor of SouthBank. On November 1, 2011, State Bank and Trust Company, as successor in interest to SouthBank, foreclosed on the unsold portions of the 67.5 acres. The lots

sold prior to that date, including the lot purchased by the Jeschkes, were expressly excluded from the foreclosure sale, at which State Bank itself purchased the lots. On September 14, 2012, State Bank sold the foreclosed subdivision property to REO Funding. Four years later, on September 9, 2016, REO sold another lot in the subdivision to the Jeschkes. In April 2017, the Jeschkes received a letter from Turnstone Group, LLC, apparently sent on behalf of REO, which stated that the homeowners association created by the original developer had gone dormant, that the homeowners association had been reincorporated, and that a meeting would be held to elect a new board of directors for the association.

On May 3, 2017, the Jeschkes filed a complaint against Turnstone, REO, and the purportedly reincorporated homeowners association, seeking, among other things, injunctive relief and a declaratory judgment as to the applicability of the declaration of covenants to their lots in light of the 2011 foreclosure. The defendants filed a motion for partial summary judgment on, among other things, the applicability of the declaration of covenants to the lots owned by the Jeschkes. After a hearing on the motion, the trial court issued an order granting the motion in part, finding that the declaration of covenants is applicable to all the lots and common property in the subdivision. The Jeschkes appeal from that partial summary judgment order.

2. *Lots sold prior to the foreclosure.*

The Jeschkes challenge the trial court's finding that lots sold prior to the 2011 foreclosure sale, which includes the lot they bought in 2009, are bound by the declaration of covenants. We find no error.

It is undisputed that the Jeschkes bought their lot in 2009 subject to the declaration of covenants. Indeed, the Jeschkes have admitted, both in the trial court and on appeal, that the lot was acquired subject to the declaration of covenants. Nevertheless, they claim that the 2011 foreclosure sale extinguished the declaration of covenants as to their lot. But as noted above, it is undisputed that only the unsold lots in the subdivision were included in the foreclosure and the Jeschkes' lot, along with the other previously sold lots, was expressly excluded from that foreclosure sale. Thus, as the trial court correctly found, the Jeschkes' lot was unaffected by the foreclosure of other lots and their 2009 lot is bound by the declaration of covenants under which they bought the property. See *Interchange Drive, LLC v. Nusloch*, 311 Ga. App. 552, 557 (716 SE2d 603) (2011) (party accepting a deed that expressly makes its interest in subdivision property subject to restrictive covenants thereby consents to be bound by such covenants and restrictions).

4

The Jeschkes mistakenly rely on the fact that the security deed was filed before the declaration of covenants. Consequently, they contend, the 2011 foreclosure under the security deed extinguished the declaration of covenants. See *Springmont Homeowners Assn. v. Barber*, 221 Ga. App. 713, 714 (472 SE2d 695) (1996) (bank's security deed had priority over a subsequently recorded declaration of restrictive covenants and foreclosure would have invalidated restrictions had they attached). That priority of filing may be relevant to whether the declaration of covenants applies to the foreclosed lots. But it is not relevant to lots — like the 2009 lot — that were expressly excluded from the foreclosure; those lots are still bound by the declaration of covenants under which they were acquired. *Springmont* is controlling. In that case, as here, certain subdivision lots were also sold by a developer subject to a declaration of covenants and other unpurchased lots were subsequently foreclosed by a bank. We held, "the [d]eclaration bound those taking [lots] under the developer[.]" Id. (citations omitted).

The alternative arguments put forth by the Jeschkes, citing evidence that the declaration had not been enforced and that there is an absence of mutuality of contract after the foreclosure, do not create genuine issues of material fact as to the applicability of the declaration of covenants to the 2009 lot. The trial court therefore

5

did not err in concluding that the lot purchased before the foreclosure is bound by the declaration of covenants.

3. *Implied covenant theory.*

As for the lots obtained by REO after the 2011 foreclosure — including the lot they purchased from REO in 2016 — the Jeschkes assert an implied covenant theory. We agree that there are genuine issues of material fact as to whether the lot bought in 2016 is bound by the declaration under an implied covenant theory.

> (W)here an owner of land subdivides it into lots for the purpose of sale, under a general plan or scheme restricting the lots to certain uses, restrictions that are embodied in such general plan or scheme may in a proper case be imposed upon the lots beyond the express restrictions contained in the deeds to the purchasers, on the theory of implied covenants. The need for such a rule is particularly compelling where third parties have relied on the applicability of the covenants. The party wishing to enforce a non-express agreement must, of course, establish the area covered by the agreement and the specific content of the restrictions alleged. This is usually accomplished by showing a common grantor's general scheme or plan for developing the property in question.

*Castle Point Homeowners Assn. v. Simmons*, 333 Ga. App. 501, 505-506 (773 SE2d 806) (2015) (citations and punctuation omitted). "Restrictive covenants may apply to lots in a planned development under an implied covenant theory, even if the developer failed to comply with all formalities, as long as the landowner had

6

knowledge of the restrictive covenants at the time he purchased the property."
*Waterfront, LLP v. River Oaks Condo. Assn.*, 287 Ga. App. 442, 445 (651 SE2d 481) (2007) (citations and punctuation omitted).

In this case, the Jeschkes have pointed to evidence creating material questions of fact as to whether the declaration of covenants is applicable to the lot that they acquired after the foreclosure. As noted above, the security deed was filed before and was thus superior to the declaration of covenants, so there is a questions of fact as to whether the declaration of covenants remained applicable to the unsold lots after the foreclosure. See *Springmont*, supra. Moreover, the Jeschkes have cited evidence that the declaration of covenants has not been implemented, that the homeowners association was not properly formed, that no dues or assessments were ever collected, and that the declaration of covenants has never been enforced. So even though the Jeschkes were clearly aware of the declaration of covenants, having previously bought a lot in 2009 subject to the declaration, there are questions of fact as to whether they had knowledge that those restrictive covenants were still in effect and applicable to the lot they purchased in 2016. The trial court therefore erred in granting partial summary judgment as to that lot acquired after the foreclosure because there

are "issue[s] of fact as to whether [it] is bound by the [declaration of] covenants under the theory of implied covenants." *Castle Point*, supra at 506-507 (citation omitted).

*Judgment affirmed in part and reversed in part. Ray and Rickman, JJ., concur.*