**THIRD DIVISION**
**DOYLE, P. J.,**
**GOBEIL, J. and SENIOR JUDGE FULLER**

**NOTICE: Motions for reconsideration must be _physically received_ in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**February 27, 2024**

# In the Court of Appeals of Georgia

A23A1649. SHACKELFORD et al. v. GEORGIA DEPARTMENT OF PUBLIC SAFETY.

DOYLE, Presiding Judge.

Walter James Shackelford was injured by a suspect fleeing a Georgia state trooper, and he and his wife, Elizabeth Shackelford, now appeal from the grant of a motion to dismiss their tort claims against the Georgia Department of Public Safety ("the DPS"). The Shackelfords contend that the trial court erred by ruling that their claims were barred by the law enforcement exception to the waiver of sovereign immunity in the Georgia Tort Claims Act ("GTCA").[1] Specifically, they argue that the trial court incorrectly ruled that the trooper involved in the chase was acting objectively reasonable in compliance with law enforcement pursuit policy. Because the

---

[1] OCGA § 50-21-20 et seq.

record supports the trial court's factual findings and application of the law, we discern no reversible error and affirm.

We conduct de novo a review of the trial court's ruling on sovereign immunity grounds, bearing in mind that the party seeking to benefit from the waiver of sovereign immunity has the burden of proof to establish waiver. Nevertheless, because a motion to dismiss on sovereign immunity grounds is based upon the trial court's lack of subject matter jurisdiction, the trial court is entitled to make factual findings necessary to resolve the jurisdictional issue. Thus, to the extent that the trial court has made factual findings necessary to its determination, those findings will be sustained if there is evidence authorizing them.[2]

The record shows that in October 2017, at approximately 2:30 p.m., Georgia State Trooper Patrick Prosser was on patrol in Milledgeville, Georgia when he noticed a Mercury Grand Marquis with the driver not wearing a seat belt. Prosser, who was

---

[2] (Citations and punctuation omitted.) *Kitchens v. Lincoln County*, 368 Ga. App. 349, 350 (890 SE2d 121) (2023), quoting *Britt v. Jackson*, 348 Ga. App. 159, 160 (819 SE2d 677) (2018), *Cowart v. Ga. Dept. of Human Svcs.*, 340 Ga. App. 183 (796 SE2d 903) (2017). See also *Rivera v. Washington*, 298 Ga. 770, 778 (784 SE2d 775) (2016) ("[A] defendant asserting an immunity defense may move to dismiss for lack of subject matter jurisdiction under OCGA § 9-11-12 (b) (1), on consideration of which, the trial court may hear evidence and make relevant factual findings to decide the threshold issue.").

stopped at an intersection at the time, turned to follow the Marquis, immediately activated his blue lights, and attempted to execute a traffic stop based on the seat belt violation.[3] Prosser noticed the passenger "sit up and then quickly sit back," and he noticed the driver looking back and forth at the passenger. Prosser radioed notice of the traffic stop, but he was unable to report the tag number at the time he initiated the stop because he was unable to read the tag. Prosser activated his siren twice to get the driver's attention, but the Marquis did not stop, so Prosser turned on his siren continuously; the Marquis then failed to stop at a red light and began fleeing. Prosser informed the main dispatch operator that he was in pursuit of a vehicle that had failed to stop.

During the pursuit, the Marquis committed several traffic violations such as failing to stop at stop signs and red lights, and Prosser continuously updated dispatch regarding their location and direction of travel. Prosser also reported speeds of 68 miles per hour in a 40-mile-per-hour zone and 100 miles per hour on a street with a posted speed limit of 45 miles per hour. Prosser's lights and siren were activated and

---

[3] See OCGA § 40-8-76.1 (b) ("Each occupant of the front seat of a passenger vehicle shall, while such passenger vehicle is being operated on a public road, street, or highway of this state, be restrained by a seat safety belt. . . .").

functioning, and while pursuing, he observed traffic to make sure he did not cause an accident, slowing at intersections to make sure other vehicles could see and hear him, at times coming to a near stop. Based on the video from Prosser's dash cam, the intersections with stop signs allowed him to see whether other vehicles were approaching before he crossed the intersections.

As the Marquis made a final turn, Prosser was able to come close to it, and he radioed dispatch that he would "attempt a PIT when I can," referring to an emergency maneuver intended to safely disable a fleeing vehicle.[4] He followed the Marquis for approximately 30 more seconds until the Marquis crossed the double-yellow line and collided head on with a pickup truck driven by James Shackelford. Shackelford was severely injured, and the passenger in the Marquis died. From the time the Marquis began fleeing, the entire pursuit lasted approximately three and one-half minutes. In accordance with the DPS policy, a pursuit critique was conducted, and after reviewing it, the DPS concluded that "Prosser used due regard [for safety] throughout the pursuit" and "did a good job."

---

[4] The DPS policy manual defines a PIT maneuver as "[t]he intentional act of using a trooper's vehicle to physically force a fleeing vehicle from a course of travel in order to stop it."

The Shackelfords brought this action against the DPS, alleging that Prosser violated the DPS's pursuit policy and recklessly disregarded safety by initiating the pursuit for a seat-belt violation and continuing the pursuit at high speed and despite multiple traffic violations. The DPS moved to dismiss the action based on sovereign immunity, relying on the law enforcement exception to the waiver of sovereign immunity in the GTCA.[5] Following a hearing, the court granted the motion, ruling that, based on the evidence in the record, the Shackelfords' claims were barred by the law enforcement exception to the waiver of sovereign immunity because Prosser's conduct was objectively reasonable and in compliance with DPS policy. The Shackelfords now appeal.

The Shackelfords argue that the trial court erred by ruling that the law enforcement exception applied to the facts of this case. Based on the record and standard of review, this argument provides no basis for reversal.

First, we address the legal background. Under the Georgia Constitution of 1983, the departments and agencies of Georgia are immune from suit unless immunity is "waived by an Act of the General Assembly which specifically provides that sovereign

---

[5] The DPS also relied on the assault and battery exception, OCGA § 50-21-24 (7), but the trial court did not reach that ground.

immunity is thereby waived and the extent of such waiver."[6] Such a waiver exists in the GTCA

> for torts committed by state officers and employees acting within the scope of their official duties or employment, provided, however, that the [S]tate's sovereign immunity is waived subject to all exceptions and limitations set forth in [the GTCA]. If a tort claim falls within the scope of any of the exceptions set forth in OCGA § 50-21-24, it is barred by sovereign immunity. As a department of the [S]tate, the [DPS] is subject to the waiver and the exceptions set forth in the [GTCA][7]

One of these exceptions to the waiver of sovereign immunity is the law enforcement exception, codified at OCGA § 50-21-24 (6): "The state shall have no liability for losses resulting from . . . the method of providing[] law enforcement, police, or fire protection."

> Our Supreme Court has construed this exception . . . as authorizing the application of sovereign immunity to the making of policy decisions by state employees and officers and to the acts and omissions of state employees and officers executing and implementing those policies. Our Supreme Court highlighted the distinction between the formulation of

---

[6] Ga. Const. of 1983, Art. I, Sec. II, Par. IX (e).

[7] (Citations and punctuation omitted.) *James v. Ga. Dept. of Pub. Safety*, 337 Ga. App. 864, 870 (4) (789 SE2d 236) (2016).

a policy and an officer's adherence to the policy by noting that if the negligence causing an injury lies in the formulating of policy — i.e., the determining of the method of police protection to provide — the government remains immune from liability. If, however, an officer or employee acts negligently in carrying out that policy, government liability may exist under the [GTCA]. . . . [I]n this case[, the plaintiffs] do[] not challenge [the DPS's] policies concerning pursuits. Rather, [they] contend[] that [Prosser] failed to properly follow those policies. Accordingly, the sole issue is whether [Prosser] was negligent in carrying out certain [DPS] policies.[8]

The DPS pursuit policy provides, in relevant part:

17.02.2 Policy

Sworn members of [DPS] are expected to make reasonable efforts to apprehend violators who flee or otherwise attempt to elude. However, [DPS] recognizes and respects the value and special integrity of each and every human life. In vesting members with the lawful authority to use force in the protection of public welfare, a special balancing of all human interests is required. Members, in the performance of their duty, must use only the force that is reasonably necessary to bring an incident under control. It is paramount that members exercise prudent and sound judgment in their actions when engaging in pursuits. Members must comply with existing laws governing vehicle pursuits. At the same time,

---

[8] (Citations and punctuation omitted.) Id. at 871 (4) (a).

they must use sound discretion and good judgment in each pursuit. It must be understood that every violator will not be apprehended. In some situations, the most professional and reasonable decision would be to terminate a pursuit in the interest of their own and the public's safety.

. . .

17.02.4 Procedures

A. In determining the appropriateness, speed and extent of a pursuit, the sworn member must exercise great care to ensure that his or her actions are objectively reasonable. In doing so, members should consider the following:

1. The nature of the offense committed by the suspect, the potential danger to the public if the suspect is not immediately apprehended and the probability of the suspect's arrest at a later date;

2. The existing traffic conditions, road surface and width, weather, visibility, road familiarity, type of area (urban, residential, rural) or any condition that would create additional dangers for the present traffic or the public;

3. The limitations and conditions of both the sworn member, the patrol car, the patrol motorcycle, and

4. Other factors that indicate the possible commission of a felony.

5. Deadly force will only be used against a fleeing vehicle or its occupants as set forth in the Use of Force policy.

The policy further provides that warning lights and sirens shall be used, and "troopers should avoid contributing to the danger that has already been created by the violating motorist." Finally, the policy prohibits pursuit if emergency equipment or radio is not functioning or a person in custody occupies the trooper's vehicle. Neither of those conditions were present.

As noted by this Court in *James v. Georgia Department of Public Safety*, "[t]he [DPS] policy at issue in this case explicitly gives officers discretion in conducting pursuits."[9] As stated in the DPS policy, the pursuing officer must exercise this discretion by taking into account factors such as the suspected offense, the conditions during the pursuit, and the risk presented by not apprehending the suspect at that time. Here, as found by the trial court, there was evidence that Prosser took into account these factors, that he weighed the conditions of the pursuit and the conduct of the suspect, and that he used his siren and lights and took other measures to reduce

---

[9] 337 Ga. App. at 871 (4) (a).

the risk presented by the pursuit. Prosser deposed that when the crash happened, he was considering ending the pursuit because he was approaching a more congested area. Further, an internal pursuit critique found that Prosser had complied with DPS policy and had exercised his discretion in an objectively reasonable manner.

Nevertheless, the Shackelfords point to this and other evidence, weighing it differently and arguing that Prosser was unreasonable for pursuing the Marquis based solely on a seatbelt violation. In particular, they point to evidence that Prosser overheard Milledgeville Police Chief Dray Swicord, who was in a different chain of command, state to another officer that Prosser should call off the pursuit shortly before the crash. But Prosser explained that he was not sure who Swicord was addressing because he overheard this statement on his portable police scanner, and it was not directed to him. Prosser received no order to call off the pursuit from dispatch, and Swicord's comment occurred less than a minute from the time of the crash and while Prosser himself considered how long to pursue the Marquis. Further, the nature of the initial offense is only one factor of many, and these decisions fall within the discretion given to an officer by DPS policy.

In the context of reviewing a ruling on the law enforcement exception to the sovereign immunity waiver in the GTCA, "[w]e are not authorized to substitute our ruling on the disputed facts for that of the trial court."[10] DPS policy afforded Prosser discretion in how and whether to conduct the pursuit. There was evidence that Prosser weighed these factors, and the evidence supports the trial court's findings as to the reasonableness of Prosser's conduct. The disputed evidence to the contrary includes

> evidence that permitted the trial court to make the factual findings he made. . . . Based on the trial court's factual findings, which are supported by evidence from the record, we conclude that the trial court correctly found that [the DPS] did not waive sovereign immunity. Accordingly, the trial court did not err in dismissing the action for lack of subject matter jurisdiction.[11]

*Judgment affirmed. Gobeil, J., and Senior Judge C. Andrew Fuller concur.*

---

[10] Id. at 872 (4) (a). See also *Britt v. Jackson*, 348 Ga. App. 159, 165 (3) (819 SE2d 677) (2018) ("Although [the plaintiff] disputes the factual findings of [the state defendant's] internal investigation and ultimately the trial court, . . . the trial court's factual findings were authorized by the evidence. It is not the job of this Court to substitute our view of disputed facts where the evidence supports the trial court's conclusion.").

[11] (Citations and punctuation omitted.) *James*, 337 Ga. App. at 872-873 (4) (a).