**THIRD DIVISION
DOYLE, P. J.,
MARKLE and PADGETT, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules**

**June 26, 2025**

# In the Court of Appeals of Georgia

A25A0526. LYLE et al. v. HEATH et al.

DOYLE, Presiding Judge.

Karen Diane Wynn Lyle and Lyle Mobile Fire Protection, LLC ("LMFP"), (collectively, "the plaintiffs") appeal from the trial court's dismissal of their complaint for malicious prosecution, false arrest, defamation, slander per se, and tortious interference with a business relationship against Jerry D. Heath, Jr., individually and in his capacity as Fire Marshal of the City of Hinesville, and the City of Hinesville. The plaintiffs appeal, arguing that the trial court erred by determining that statutory or sovereign immunity applied to bar their claims. For the reasons that follow, we vacate and remand for further proceedings consistent with this opinion.

"We review de novo a trial court's grant of a motion to dismiss on sovereign immunity grounds."[1] "In deciding a motion to dismiss, all pleadings are to be construed most favorably to the party who filed them, and all doubts regarding such pleadings must be resolved in the [pleading] party's favor."[2]

The record shows that Lyle's late husband, Jonathan Lee Lyle, founded LMFP, which sells fire extinguishers and other related products and performed certain maintenance of those extinguishers. Jonathan passed away in 2019. Lyle worked at LMFP as a bookkeeper from that time forward, and John Mann was an employee.

On May 4, 2021, Heath arrested Lyle for aiding and abetting Mann in his failure to abide by fire extinguisher and suppression systems regulations[3] and for falsely

---

[1] (Punctuation omitted.) *James v. Ga. Dept. of Pub. Safety*, 337 Ga. App. 864, 865 (1) (789 SE2d 236) (2016). See also *Blowe v. Roberts*, 371 Ga. App. 300, 301 (899 SE2d 439) (2024).

[2] (Punctuation omitted.) *Siegrist v. Herhold*, 365 Ga. App. 828, 828-829 (880 SE2d 336) (2022), quoting *Austin v. Clark*, 294 Ga. 773, 775 (755 SE2d 796) (2014).

[3] See OCGA § 25-12-19 (b) (2) ("(b) It shall . . . constitute a misdemeanor willfully or intentionally to: (2) Improperly install a fire suppression system or improperly recharge, repair, service, or test any such suppression system or any such portable fire extinguisher[.]").

submitting documents to the State Fire Marshal's office to obtain certification.[4] On May 7, Heath arrested Mann for impersonating a fireman[5] and for failing to abide by fire extinguisher and suppression systems regulations.[6] Accordingly to Lyle, Heath knew that she had a limited role at LMFP, but he arrested her while she was at her elementary school teaching job.

Lyle and LMFP filed the instant lawsuit alleging that prior to the arrests, Lyle's father-in-law, Dr. Terry Lyle, overheard Heath say that he had warrants for Mann's arrest but admitted that the charges were unlikely to go forward. Terry Lyle claimed

---

[4] See OCGA § 16-10-20 ("A person who knowingly and willfully falsifies, conceals, or covers up by any trick, scheme, or device a material fact; makes a false, fictitious, or fraudulent statement or representation; or makes or uses any false writing or document, knowing the same to contain any false, fictitious, or fraudulent statement or entry, in any matter within the jurisdiction of any department or agency of state government or of the government of any county, city, or other political subdivision of this state shall, upon conviction thereof, be punished by a fine of not more than $1,000.00 or by imprisonment for not less than one nor more than five years, or both.").

[5] See OCGA § 16-10-23 ("A person who falsely holds himself or herself out as a peace officer, officer of the court, or other public officer or employee with intent to mislead another into believing that he or she is actually such officer commits the offense of impersonating an officer and, upon conviction thereof, shall be punished by a fine of not more than $1,000.00 or by imprisonment for not less than one nor more than five years, or both.").

[6] See OCGA § 25-12-19 (b) (2).

3

that Heath said that even if the arrests were invalid, he believed that negative publicity from the arrests would result in LMFP's closure. The charges against Lyle and Mann were dropped on January 26, 2023, but not before Lyle and LMFP suffered injury to their reputations and business.

Heath and the City moved to dismiss the complaint, arguing that they were immune from suit under OCGA § 25-2-1 et seq., specifically OCGA § 25-2-38.1 (a), that Heath was a state actor under that section and deputized to perform investigations and arrests under OCGA § 25-2-9, and that the State rather than the City was the real party at interest.

The record shows that Heath was employed by the City of Hinesville as a local fire marshal and was deputized by the State.[7] Correspondence between Heath, the Office of Insurance and Safety Fire Commissioner, and the City, show that the City requested Heath be deputized as a local fire marshal under OCGA § 25-2-12.1 to "conduct fire safety inspections of existing buildings and structures; . . . issue permanent and temporary certificates of occupancy; [and] conduct arson investigations." Having had Heath deputized, the City agreed under OCGA §§ 25-2-

_____

[7] See OCGA § 25-2-12.1 (b).

12.1 and 25-2-14 to "accept[] full responsibility of the enforcement of the following areas of responsibility:" (1) fire safety inspections, including inspecting and enforcing minimum standards on existing buildings; issuing certificates of occupancy; promoting fire safety; maintaining a set of current fire safety laws; and preparing reports for the state fire marshal's office; and (2) arson investigations, including conducting such investigations, maintaining current fire safety laws, maintaining a complete filing system on each incident; and preparing monthly reports for the state fire marshal's office. None of the documents relating to Heath's status as a deputized local fire marshal include references to enforcement of subject matter beyond that listed above.

The record also contains narratives from Shane Taylor with the Enforcement Division of the Insurance and Fire Safety Commissioner's Office from September 2020, in which Taylor described speaking with Heath about Heath's concerns regarding LMFP and certain improperly tagged fire extinguishers. Taylor spoke with Lyle, Mann, and several other individuals allegedly connected to LMFP. The report stated that Lyle was working to correct any necessary licensing problems or other errors made by LMFP while performing service on fire extinguishers. The report

contained no reference to criminal charges or recommendations for the arrest of Lyle or Mann, but it did list infractions of OCGA § 25-12-1 et seq., and the related Ga. Comp. R. & Regs. r. 120-3-23-.01 et seq. The report makes no reference to Mann posing as a fireman.

The Fire Commissioner, Craig Landolt, averred in his affidavit of record that Heath was deputized to complete investigations under fire safety codes. Landolt's affidavit further states that his investigators asked Heath to procure warrants related to Taylor's investigation of LMFP.

The trial court granted the motion to dismiss, finding that OCGA § 25-2-38.1 (a) protected Heath and the City from liability, and finding that Heath was authorized to arrest Lyle and Mann under OCGA § 25-2-9 (c)[8] as a deputized state officer pursuant to OCGA § 25-2-12.1. Lyle and LMFP appeal.

1. Lyle and LMFP argue that the trial court erred to the extent it found that OCGA § 25-2-38.1 (a) grants statutory immunity to Heath and the City. We agree.

---

[8] OCGA § 25-2-9 (c) provides, in relevant part: "Personnel employed and authorized by the state fire marshal shall have the power to make arrests for criminal violations established as a result of investigations."

6

"When we consider the meaning of a statute, we must presume that the General Assembly meant what it said and said what it meant."[9] "Legislative intent is determined from consideration of the entire statute; thus we consider a statutory provision not in isolation, but in the context of the other statutory provisions of which it is a part."[10] Additionally, "specific statutes govern over more general statutes."[11] "As in all cases of statutory construction, we remain mindful that we must give the text its plain and ordinary meaning, view it in the context in which it appears, and read it in its most natural and reasonable way."[12]

OCGA § 25-2-38.1 states:

(a) Nothing in this chapter shall be construed to constitute a waiver of the sovereign immunity of the state, or any officer or employee thereof, in carrying out the provisions of this chapter. No action shall be

---

[9] (Citations and punctuation omitted.) *Deal v. Coleman*, 294 Ga. 170, 172 (1) (a) (751 SE2d 337) (2013).

[10] *Abdel-Samed v. Dailey*, 294 Ga. 758, 763 (2) (755 SE2d 805) (2014).

[11] *Glinton v. And R, Inc.*, 271 Ga. 864, 867 (524 SE2d 481) (1999).

[12] (Citations and punctuation omitted.) *State v. Cook*, 317 Ga. 659, 660 (1) (893 SE2d 670) (2023). See also *Integon Indem. Corp. v. Canal Ins. Co.*, 256 Ga. 692, 693 (353 SE2d 186) (1987) ("Statutes should be read according to the natural and most obvious import of the language, without resorting to subtle and forced constructions, for the purpose of either limiting or extending their operation.").

maintained against the state, any municipality, county, or any officer, elected officer or employees thereof, for damages sustained as a result of any fire or related hazard covered in this chapter by reason of any inspection or other action taken or not taken pursuant to this chapter.

(b) Nothing in this chapter shall be construed to relieve any property owner or lessee thereof from any legal duty, obligation, or liability incident to the ownership, maintenance, or use of such property.

Based on its plain language, OCGA § 25-2-38.1 addresses immunity with respect to "carrying out the provisions of this chapter [Chapter 2]," and "by reason of any inspection or other action taken or not taken pursuant to this chapter."

Title 25 contains several chapters regarding Fire Protection and Safety. Different chapters under the Title deal with different subjects, including blasting, fireworks, firefighter training, and inspection of carnival rides. Chapter 2, in which OCGA § 25-2-38.1 appears, covers "Regulation of Fire and Other Hazards to Persons and Property Generally." Specifically, the chapter covers fire safety inspections or investigations, which references inspections of buildings for compliance with various

fire safety codes.[13] Chapter 2 also deals with certificates of occupancy,[14] possession of explosives,[15] handling hazardous materials,[16] and arson and fire investigations,[17] none of which are the subject matter upon which Lyle's and Mann's arrests were based.

Instead, Lyle and Mann were arrested for violations for acts regulated under Chapter 12 of Title 25, which provides rules and regulations for people and firms engaged in "the business of installing, inspecting, recharging, repairing, servicing, or testing of portable fire extinguishers or fire suppression systems[.]"[18]

Reading OCGA § 25-2-38.1 in context, we do not believe that the legislature intended for any statutory immunity therein to apply to all chapters within Title 25. As stated above, the plain language of the statute supports our construction, providing

---

[13] See, e.g., OCGA §§ 25-2-13 to 25-2-14.1. See also OCGA § 25-2-12 (regarding counties' and municipalities' adoption and enforcement of fire safety standards regarding buildings and structures). The opinions in the affidavit submitted by Landolt do not change our reading of Chapter 2 and its applicability.

[14] OCGA § 25-2-15.

[15] OCGA § 25-2-17.

[16] OCGA § 25-2-16.

[17] OCGA §§ 25-2-27, 28, 32, 32.1, 32.2, 33, 33.1, 34.

[18] OCGA § 25-12-1.

immunity "for damages sustained as a result of any fire or related hazard *covered in this chapter* by reason of any inspection or other action taken or not taken *pursuant to this chapter* [i.e., Chapter 2]."[19] Accordingly, the trial court erred to the extent that it granted immunity to Heath and the City based on the provisions of OCGA § 25-2-38.1.[20]

2. Relatedly, the trial court found that Heath was a deputized state officer with arrest powers under OCGA § 25-2-9 (2021), which shielded him from liability for his arrest of Lyle and Mann. We disagree that OCGA § 25-2-9 (2021) applied to violations under Title 12 at the time of the arrests at issue.

As explained in Division 1, Chapter 2 of Title 25 provides for rules and regulations related to arson and investigations thereof, fire-related investigations and loss reporting, explosives, hazardous materials, and building safety related to fire prevention, protection, and egress, referred to as fire safety inspections and investigations.[21] OCGA § 25-2-9 (2021) provided for investigations and arrests related

---

[19] (Emphasis supplied.) OCGA § 25-2-38.1 (a).

[20] We further address basic official and sovereign immunity in Division 3, below.

[21] See OCGA § 25-2-1 et seq.

to "investigat[ions into] the cause and origin of any fire[.]"[22] Former subsection (b) provided for arrests in relation to investigations. It stated that

> personnel employed and authorized by the state fire marshal must have the power to make arrests for criminal violations established as a result of investigations. Such personnel shall hold certification as a peace officer . . . and shall have the power to execute arrest warrants and search warrants for criminal violations and to arrest, upon probable cause and without warrant, any person found violating any of the provisions of applicable criminal laws. . . .[23]

---

[22] OCGA § 25-2-9 (a) (2021). OCGA § 25-2-9 was amended effective July 1, 2024, to add a new subsection (b), which states that "[u]pon the direction of the Commissioner or the request of the sheriff of the county, the chief of police of the jurisdiction, the district attorney of the judicial circuit, or a local fire official, the state fire marshal and any employees of such official shall have the authority to investigate and enforce any laws provided for *within this title* or *any regulations promulgated under this title*." (Emphasis supplied). Pretermitting whether this subsection could be read to extend arrest powers under Chapter 2 to violations under Chapter 12, the amendment does not apply in this case because the arrests at issue occurred in 2021. See *Coleman*, 294 Ga. at 175 (1) (b), quoting *Polito v. Holland*, 258 Ga. 54, 55 (2) (365 SE2d 273) (1988) ("Generally statutes prescribe for the future and that is the construction to be given unless there is a clear contrary intention shown."). To the extent that the City and Heath contend that former subsection (b) should be read to grant him arrest powers for anything other than investigations under Chapter 2, we disagree because we read that subsection in relation to the other statutory provisions of which it is a part. See *Abdel-Samed*, 294 Ga. at 763 (2).

[23] OCGA § 25-2-9 (b) (2021).

Chapter 12, on the other hand, regulates licenses of firms and individuals who work on fire extinguishers and fire suppression systems, which are updated yearly.[24] Failure to do so, however, simply results in the need to pay a fee and penalty or reapply for licensing.[25] While the chapter may speak to certain violations as "unlawful,"[26] the remedies for violations of fire extinguisher inspections or tagging, including falsification "of any record required to be maintained by this chapter or rules or regulations adopted pursuant to this chapter" is suspension of the license.[27] The Chapter instructs the officer to serve a cease and desist order to the individual or firm if a violation of the Chapter is observed.[28] If the cease and desist

---

[24] See OCGA § 25-12-9. See also Ga. Comp. R. & Regs. r. 120-3-23-.01 et seq.

[25] See OCGA § 25-12-9.

[26] See OCGA § 25-12-16.

[27] See OCGA § 25-12-17.

[28] See OCGA § 25-12-18 (a). See also Ga. Comp. R. & Regs. r. 120-3-23-.15. To the extent that Landolt averred that the investigation and arrest at issue arose from OCGA § 25-2-13, we disagree with his interpretation of the statute. That statute deals with fire safety for buildings and structures presenting special hazards, which are subject to specific requirements allowing people to safely be within the building without being trapped in the event of a fire. The Code section prescribes numerous requirements for the buildings that are subject to inspection by officers. The specific subsection referenced, OCGA § 25-2-13 (d) states:

(d) The Commissioner is directed to investigate and examine construction and engineering techniques; properties of construction materials, fixtures, facilities, and appliances used in, upon, or in connection with buildings and structures; and fire prevention and protective techniques, including, but not limited to, the codes and standards adopted, recommended, or issued from time to time by the National Fire Protection Association (National Fire Code and National Electric Code), the American Insurance Association (National Building Code), the successor to the National Board of Fire Underwriters, the American Standards Association, and the Standard Building Code Congress (Southern Standard Building Code). Based upon such investigation, the Commissioner is authorized to determine and by rule to provide what reasonable and practical protection must be afforded property and persons with respect to: exits; fire walls and internal partitions adequate to resist fire and to retard the spread of fire, smoke, heat, and gases; electrical wiring, electrical appliances, and electrical installations; safety and protective devices, including, but not limited to, fire escapes, fire prevention equipment, sprinkler systems, fire extinguishers, panic hardware, fire alarm and detection systems, exit lights, emergency auxiliary lights, and other similar safety devices; flameproofing; motion picture equipment and projection booths; and similar facilities; provided, however, that any building described in subparagraph (b)(1)(C) of this Code section shall be required to have a smoke or products of combustion detector listed by a nationally recognized testing laboratory; and, regardless of the manufacturer's

13

order is violated, then the officer can suspend the license of the person or firm.[29] After written notice of violations, the officer may impose a monetary fine, depending on the number of times the person or firm has violated the provision.[30] Any order issued under the chapter must contain or be accompanied by a notice of an opportunity for

instructions, such detectors in these buildings shall be located in all interior corridors, halls, and basements no more than 30 feet apart or more than 15 feet from any wall; where there are no interior halls or corridors, the detectors shall be installed in each sleeping room. All detection systems permitted after April 1, 1992, shall be powered from the building's electrical system and all detection systems required by this chapter, permitted after April 1, 1992, shall have a one and one-half hour emergency power supply source. Required corridor smoke detector systems shall be electrically interconnected to the fire alarm, if a fire alarm is required. If a fire alarm is not required, the detectors at a minimum shall be approved single station detectors powered from the building electrical service.

The passing reference to fire extinguishers and fire suppression units in this subsection did not authorize the arrests of Lyle or Mann for violations of regulations contained in Chapter 2.

[29] See OCGA § 25-12-18 (b).

[30] See OCGA § 25-12-18 (c).

hearing,[31] and only after an order is issued and a subsequent violation occurs does a violation result in a "misdemeanor."[32] OCGA § 25-12-18 (e) states that "[i]n addition to other powers granted to the Commissioner under this chapter, the Commissioner may bring a civil action to enjoin a violation of any provision of this chapter or of any rule, regulation, or order issued by the Commissioner under this chapter." Chapter 12 contains neither (1) the authority to arrest for violation of the requirements therein,[33] nor (2) a section like OCGA § 25-2-38.1 providing any immunity for acts by an official taken pursuant to Chapter 12 powers.

Although Landolt averred that Heath was authorized to arrest Lyle and Mann under Chapter 2 and OCGA § 25-2-9, his averment alone cannot not create authority beyond that granted by statute. Additionally, Landolt's statements are contrary to Taylor's investigative narrative, which states that he began the investigation into Lyle

---

[31] See OCGA § 25-12-18 (d).

[32] See OCGA § 25-12-18 (d), see also OCGA § 25-12-19.

[33] For instance, OCGA § 25-12-18 (a) states that "[w]henever the Commissioner shall have reason to believe that any individual is or has been violating any provisions of this chapter, the Commissioner, his or her deputy, his or her assistant, or other designated persons may issue and deliver to the individual an order to cease and desist such violation." It goes on to provide different levels of fines or civil penalties, including loss of a license for certain periods of time.

and LMFP at Heath's request, and which contains recommendations related to OCGA § 25-12-1 et seq. and the related rules and regulations under Ga. Comp. R. & Regs. r. 120-3-23-.01 et seq. Nothing in Taylor's narrative mentions arrests or criminal charges, certainly not charges under OCGA §§ 16-10-20 or 16-10-23, and it instead references the civil penalties applied under OCGA § 25-12-18.

Accordingly, the trial court erred by applying OCGA § 25-2-9 or Chapter 2 generally to bar Lyle and LMFP's claims against Heath and the City.

3. Lyle and LMFP also argue that the trial court erred by finding that Heath was a state official for purposes of his actions at issue here based on the fact that Heath was deputized under OCGA § 25-2-12.1[34] and by finding as a result that the City was not a proper party.

We agree that there is nothing in the documents provided in the record nor in the language of OCGA § 25-2-12.1 that establish as a matter of law that Heath was a state official for purposes of enforcement of matters under OCGA § 25-12-1 et seq.

---

[34] In the order, the trial court found that Lyle and LMFP conceded that Heath was a state official, but the documents to which the court cites do not support this finding, at least with respect to his relevant conduct. Rather Lyle and LMFP argued that to the extent Heath was deputized as a state officer, it was for matters unrelated to his actions against Lyle and Mann as discussed in Divisions 1 and 2. Thus, we conclude that this issue was neither conceded nor waived.

Based on the documents provided, Heath was deputized to act as a state officer to conduct building inspections and arson investigations.[35] Nevertheless, based on the procedural posture of the case and the fact that discovery has not occurred, it is too early to absolutely resolve as a matter of law the question of whether Heath was acting as a municipal or state officer when he took these actions at issue.[36]

We therefore vacate the order and remand to more fully develop the factual record, not only as to Heath's status as a municipal or state actor, but also as to the full investigation, which will bear on the remaining questions as to whether the City or Heath are protected by sovereign or official immunity (or whether the Georgia Tort Claims Act applied), and whether Heath acted with malice and its effect on the application of immunity in this case.[37] Thus, we decline the City's request to apply the

---

[35] See, e.g., OCGA §§ 25-2-13 to 25-2-15. See also OCGA § 25-2-12 (regarding counties' and municipalities' adoption and enforcement of fire safety standards regarding buildings and structures). Landolt's affidavit does not change our reading of the plain language of Chapters 2 and 12; at most, the affidavit highlights the remaining facts that need to be developed in discovery.

[36] See, e.g., *Austin v. Clark*, 294 Ga. 773, 775 (755 SE2d 796) (2014) (reversing the grant of sovereign immunity and remanding for discovery as to issues of fact regarding discretionary and ministerial duties, among other things).

[37] See id. See also *Owens v. City of Greenville*, 290 Ga. 557, 559-561 (3) (722 SE2d 755) (2012) (discussing the scope of sovereign immunity of municipalities and

sovereign immunity analysis at this time. Moreover, given the limited record before us and the lack of ruling below, we decline to address the City's arguments that any of the individual claims should be dismissed on the basis of the statute of limitation or other legal principals. Again, those facts may be developed on remand during discovery and raised in a subsequent motion to dismiss or for summary judgment.

*Judgment vacated and case remanded with direction. Markle and Padgett, JJ., concur.*

---

immunity of municipal employees); *Siegrist*, 365 Ga. App. at 831-832 (affirming the trial court's denial of the motion to dismiss for further development of the factual record as to official immunity); *Marshall v. Browning*, 310 Ga. App. 64, 67-68 (712 SE2d 71) (2011) (discussing application of official immunity when there is an allegation of actual malice).